372 So.2d 117 (1979)
DADE COUNTY MEDICAL ASSOCIATION, Petitioner,
v.
John HLIS and Joyce Hlis, His Wife, Peninsular Fire Insurance Company, Genichlor of Dade County, Inc., All Florida-Distributors, Inc., d/b/a All Florida Pool Supplies, and Fremont Indemnity Company, Corporations Licensed to Do Business in the State of Florida, Respondents.
No. 79-264.
District Court of Appeal of Florida, Third District.
May 22, 1979.
Rehearing Denied July 10, 1979.
*118 Goodwin, Ryskamp, Welcher & Carrier and Arthur M. Simon, Miami, for petitioner.
Demos, Dougherty & Perez, Kenneth B. Sherouse, Jr., Richard M. Gale, Miami, for respondents.
Before HENDRY, HUBBART and SCHWARTZ, JJ.
SCHWARTZ, Judge.
The Dade County Medical Association (DCMA) seeks review, by petition for a writ of common law certiorari, Fla.R.App.P. 9.100, of an order which required it to produce records of its Ethics Committee concerning two physicians who are members of the Association. We grant the petition and quash the order under review.
The doctors in question were treating physicians of John Hlis who was injured in an automobile accident on July 10, 1976. Hlis and his wife sued those allegedly liable for the accident, as well as their insurance company, Peninsular Fire, in the Dade County Circuit Court. In the course of taking discovery in that case, the defendants served a subpoena duces tecum on the DCMA which called for its records custodian to produce at a deposition "any and all records" concerning the two physicians. In response, the Association produced all of the records requested except those of its Ethics Committee. The DCMA moved, pursuant to Fla.R.Civ.P. 1.310(b), for a protective order precluding discovery of those records as privileged either under Section 768.40, Florida Statutes (1977) or as a matter of public policy. The trial court denied both that motion and a subsequent motion for rehearing based on the asserted ground that the documents were "immaterial and irrelevant and not calculated to lead to the discovery of admissible evidence." The DCMA was ordered to produce the documents *119 within five days. Before the expiration of that period, the Association petitioned this court for certiorari and for a stay of the order of production. We granted the stay; issued a rule to show cause why the petition should not be granted, Fla.R.App.P. 9.100(f); and have heard oral argument. We have concluded that the order under review constitutes a departure from the essential requirements of the law from which immediate relief is appropriate[1] and therefore grant the petition for certiorari.
The function of the Ethics Committee of the DCMA, the records of which were ordered produced below, is to investigate, consider and discuss issues which involve the professional conduct of its member physicians. We think it self-evident that this activity, as a means of improving the quality of medical practice in our community through self-regulation, is a salutary one which should be encouraged. More to the point as to the issues presented here, we also agree with petitioner that it is important, perhaps indispensable, to the achievement of the committee's purposes that its proceedings remain confidential. It is obvious that both complaints and free discussion about the activities of physicians would be markedly discouraged if their contents were to be held open to public perusal. These considerations were largely responsible for the recent enactment of Section 768.40, Florida Statutes (1977), which provides in pertinent part:
"(1) As used in this section, the term `medical review committee' or `committee' shall mean a committee of a state or local professional society of health care providers or of a medical staff of a licensed hospital or nursing home ... which [committee] is formed to evaluate and improve the quality of health care rendered by providers of health service or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area."
* * * * * *
"(4) The proceedings and records of committees as described in the preceding subsections shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee, ..." [emphasis supplied]
Although the DCMA Ethics Committee undoubtedly qualifies as a "medical review committee" under § 768.40(1), see Feminist Women's Health Center v. Mohammad, 415 F. Supp. 1258 (N.D.Fla. 1976), we cannot hold its records are privileged from discovery under § 768.40(4), which provides that the privilege exists only "in [a] civil action against a provider of professional health services ..." Since the action below was simply one for damages against those who negligently caused an auto accident, no amount of judicial interpretation can render the statute applicable to this case. Cf. Good Samaritan Hospital v. Simon, 370 So.2d 1174 (Fla. 4th DCA 1979).
The non-applicability of the statutory privilege does not mean, however, that we may or should ignore the considerations of public policy which informed the enactment of the statute and of which we have spoken.[2] Even without a pertinent statute, *120 several cases have held that records of bodies similar to the Ethics Committee are not subject to discovery. The leading such authority is Bredice v. Doctors Hospital, Inc., 50 F.R.D. 249 (D.D.C. 1970), adhered to, 51 F.R.D. 187 (D.D.C. 1970), affd., 156 U.S.App. D.C. 199, 479 F.2d 920 (1973). At 50 F.R.D. 250, 251, the court held:
"Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a sine quo non of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.
The purpose of these staff meetings is the improvement, through self-analysis, of the efficiency of medical procedures and techniques. They are not a part of current patient care but are in the nature of a retrospective review of the effectiveness of certain medical procedures. The value of these discussions and reviews in the education of the doctors who participate, and the medical students who sit in, is undeniable. This value would be destroyed if the meetings and the names of those participating were to be opened to the discovery process.
`The public interest may be a reason for not permitting inquiry into particular matters by discovery.' 4 Moore, Federal Practice ¶ 26.22(2) at 1287 (2d ed. 1969). As doctors have a responsibility for life and death decisions, the most up-to-date information and techniques must be available to them. There is an overwhelming public interest in having those staff meetings held on a confidential basis so that the flow of ideas and advice can continue unimpeded. Absent evidence of extraordinary circumstances, there is no cause shown requiring disclosure of the minutes of these meetings."
See also Franklin v. Blank, 86 N.M. 585, 525 P.2d 945 (1974); Oviatt v. Archbishop Bergan Mercy Hospital, 191 Neb. 224, 214 N.W.2d 490 (1974); Gillman v. United States, 53 F.R.D. 316 (S.D.N.Y. 1971); Annot., Discovery of Hospital's Internal Records, 81 A.L.R.3d 944 (1977); cf. Banks v. Lockheed-Georgia Co., 53 F.R.D. 283, 285 (N.D.Ga. 1971). Very significantly, this court has cited with approval and followed the Bredice case in Carter v. Metropolitan Dade County, 253 So.2d 920 (Fla. 3d DCA 1971). We again endorse the views expressed in that opinion.
In opposition to these significant considerations which would preclude discovery, those who seek it have made virtually no showing at all. The defendants in Hlis' personal injury action, who are the only real parties respondent in interest,[3] contend in this court that the DCMA documents are pertinent to their affirmative defense that the plaintiff's injuries are due in whole or in part to the "acts of negligence of others not a party to this cause," presumably the doctors whose records are now at issue. But since the defendants are responsible as a matter of law even for an aggravation of the plaintiff's initial injuries caused by his doctors' malpractice, this evidence would be neither admissible nor likely to lead to the discovery of relevant evidence in the proceeding below. Stuart v. Hertz *121 Corp., 351 So.2d 703, 707 (Fla. 1977); J. Ray Arnold Corp. v. Richardson, 105 Fla. 204, 141 So. 133 (1932).[4]
It is true, as the defendant-respondents argue, that, in the ordinary case, a non-party who challenges discovery may not contend that the materials sought are not relevant to the underlying action. Ghandi v. Police Dept. of City of Detroit, 74 F.R.D. 115, 123 (E.D.Mich. 1977). Nevertheless, the DCMA surely has standing to assert its own interest in preserving confidentiality as a means to the effective self-discipline of its members. It likewise may assert the similar interest and concern of those who report and comment upon alleged medical improprieties. See Tucson Medical Center, Inc. v. Misevch, 113 Ariz. 34, 545 P.2d 958, 961 (1976); Boddy v. Parker, 45 A.D.2d 1000, 358 N.Y.S.2d 218 (1974). Moreover, Fla.R.Civ.P. 1.310(b) specifically permits "the person to be deposed" to file a motion for an order of protection from a notice of taking deposition.[5] As is stated in the Ghandi case, supra, at 74 F.R.D. 123-124:
"... a third party deponent . . is properly concerned only with whether the subpoena is burdensome, oppressive, unreasonable or seeks the disclosure of confidential information. If a subpoena duces tecum does fall into one of these categories, it may be quashed, modified, or subject to a protective order, even though it seeks relevant information. Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969)." [e.s.]
In Argonaut Ins. Co. v. Peralta, 358 So.2d 232 (Fla. 3d DCA 1978), cert. denied, 364 So.2d 889 (Fla. 1978), this court, at the instance of the defendant physician, denied discovery of the records of other patients the doctor had similarly treated. The decision was based largely upon a concern for the rights of those unrepresented "strangers" to the action. It is all the more clear that we should consider a similar claim of confidentiality, when, as in this case, it is raised by one of those directly concerned in preserving it.
Many, probably most, discovery questions may be decided by a proper balancing of the competing interests to be served by granting discovery or by denying it. See, e.g., Argonaut Ins. Co. v. Peralta, supra; American Health Plan v. Kostner, 367 So.2d 276 (Fla. 3d DCA 1979); Travelers Indemnity Co. v. Salido, 354 So.2d 963 (Fla. 3d DCA 1978); Begel v. Hirsch, 350 So.2d 514 (Fla. 4th DCA 1977), cert. denied, 361 So.2d 830 (Fla. 1978); Reeg v. Fetzer, 78 F.R.D. 34 (W.D.Okl. 1976); Payne v. Howard, 75 F.R.D. 465 (D.D.C. 1977). In this case, the interest of the public, of the DCMA, and of those the association represents in the non-production of the records in question, far outweighs the almost chimerical grounds for their discovery asserted by the respondents.
By this decision, we do not establish a general common-law "privilege" of non-disclosure of documents of the character involved in this case, much less indicate the parameters of such a privilege. We hold merely that, in view of what has been called "the overwhelming public interest in maintaining the confidentiality" of such records, Tucson Medical Center, Inc. v. Misevch, supra, at 545 P.2d 962, the defendants have not made the "showing of exceptional necessity" or of "extraordinary circumstances" which is required to justify their production. Bredice v. Doctors Hospital, supra, at 50 F.R.D. 250, 251.
Certiorari granted.
NOTES
[1] In the exercise of the judicial discretion involved in determining whether certiorari should be granted, we decline, as the respondents suggest, to postpone determination of the significant issues involved in this case until the DCMA is held in contempt for failure to produce the documents in question. Joldersma v. Stewart, 370 So.2d 80 (Fla. 2d DCA 1979); see Dade County v. Grossman, 354 So.2d 131 (Fla. 3d DCA 1978); compare Strain v. Miami Transfer Co., 155 So.2d 170 (Fla. 3d DCA 1963), cert. denied, 161 So.2d 216 (Fla. 1964).
[2] As the petitioner cogently argues, since the statute immunizes the records from discovery in a malpractice case, in which they might be of the greatest significance to the litigants, there is all the more reason to recognize the public interest in preserving their confidentiality in a case, such as this one, in which the parties are at best only tangentially interested in their contents. Indeed, the lack of a demonstration of real need for the records by the defendant-respondents, the movants below, is one of the bases of our holding that they should not be produced.
[3] In the trial court, the plaintiffs-Hlis took no part below in the present controversy, which was litigated only between the defendants and the DCMA. They belatedly appeared in this court to assert their interest in proceeding to trial against Peninsular and the other defendants without the delay occasioned by the pendency of the case in this court. In support of that argument, they have asserted, citing Stuart v. Hertz Corp., infra, the irrelevance of the records to their case.
[4] Even if the issue is at all pertinent, our holding that the records themselves are not subject to production does not affect the defendants' right to discovery as to the factual basis of any complaints, or any information within the knowledge of any witness concerning the events surrounding the doctors' allegedly improper treatment. See F.S. § 768.40(4), supra.
[5] In Sunrise Shopping Center, Inc. v. Allied Stores Corp., 270 So.2d 32 (Fla. 4th DCA 1972) the court held that an opposing party had standing on behalf of a non-party witness to move to quash a subpoena duces tecum as unreasonable and oppressive. A fortiori, the non-party, as here, may do so himself.