535 So.2d 308 (1988)
BAY MEDICAL CENTER, Petitioner,
v.
Edward Lee SAPP, As the Personal Representative of the Estate of Andy Lee Sapp, Respondent.
Nos. 88-1507, 88-1083.
District Court of Appeal of Florida, First District.
December 5, 1988.
Janet W. Adams of Adams, Hill, Fulford & Morgan, Orlando, for petitioner.
Michael C. Overstreet and Graham Clarke of Staats, Overstreet, White & Clark, Panama City, for respondent.
BARFIELD, Judge.
The petitioner has sought review by certiorari of two trial court discovery orders compelling petitioner to produce documents and answer interrogatories. We grant the petitions and quash both orders.
Respondent, Edward Sapp, filed a malpractice action against Dr. John Gooding and petitioner, Bay Medical Center, alleging the wrongful death of respondent's son, Andy Sapp. The suit claimed that Dr. *309 Gooding was intoxicated at the time he treated Andy Sapp. Petitioner was alleged to be negligent in allowing Dr. Gooding to have medical staff privileges and to remain on the medical staff at the hospital because of the hospital's alleged knowledge of Dr. Gooding's alcoholism.
Respondent filed a request for production, requesting documents related to the treatment of Andy Sapp, including committee reports, committee minutes, investigative reports and analyses, patient complaints against Dr. Gooding and Dr. Gooding's personnel file, including personnel complaints, disciplinary reports and all impaired physician reports. Petitioner objected to production of these documents. The trial court found respondent was prohibited from discovering the "investigations, proceeding and records" of petitioner generated by its governing board or an authorized committee for the purpose of granting Dr. Gooding staff membership, investigating disciplinary actions against Dr. Gooding, or evaluating his professional medical competence during his tenure on the hospital staff, to the extent the suit "arises out of" matters which were the subject of these investigations or proceedings. Although the motion to compel was denied, the court held that upon a showing that the burdens imposed by Fla.R.Civ.P. 1.280(b)(2) were met, respondent could discover incident reports generated by the hospital's internal risk management program as to matters which gave rise to the lawsuit. Upon a showing of "exceptional necessity" or "extraordinary circumstances" justifying their production, petitioner could discover documents which had to do with Bay Medical investigations of events that did not give rise to the suit.
Respondent later renewed his motion to compel. He maintained he was entitled to discovery of incident reports regarding matters related to Dr. Gooding's treatment of Andy Sapp as he had met the burdens imposed by Fla.R.Civ.P. 1.280(b)(2). Additionally, respondent claimed entitlement to discovery of documents maintained by the hospital which had to do with events that did not give rise to the litigation upon a showing of "exceptional necessity" and "extraordinary circumstances." Bay Medical had systematically refused to answer any questions as to its knowledge of Dr. Gooding's past conduct at the hospital and had systematically instructed all witnesses not to answer questions set out in respondent's Second Set of Supplemental Interrogatories. Respondent maintained there was no other reasonable means to obtain discovery of these facts. Following a hearing on the motion to compel, the trial court granted the motion as to any incident reports generated by Bay Medical's Internal Risk Management Program's investigation into matters which gave rise to the lawsuit. Respondent was also found to have shown circumstances justifying production of the peer review committee documents maintained by the hospital which had to do with related events that did not give rise to this litigation.
In a subsequent trial court order Bay Medical was required to answer ten interrogatories about internal investigations of Dr. Gooding.

PETITIONS
Petitioner argues that there is certiorari jurisdiction under Fla.R.App.P. 9.030(b)(2)(A) as the order compelling production departs from the essential requirements of law and will cause material injury which cannot be remedied by a subsequent appeal. Petitioner contends the documents sought are privileged under various statutory provisions and case law. Petitioner contends the compelled disclosure of peer review documents as to Dr. Gooding's staff privileges violates the absolute statutory privilege against disclosure as the documents sought deal with investigations of the incident giving rise to the lawsuit. Additionally, there was no showing of extraordinary circumstances so as to overcome the strong public policy against disclosure of medical review documents as to matters not giving rise to the lawsuit. The discovery order also includes incident reports that are privileged under section 395.041, Florida Statutes (1987), a privilege analogous to the work product privilege in Fla. R.Civ.P. 1.280(b)(2). Respondent has failed *310 to meet the burden required to overcome this privilege. The required production of incident reports filed by other patients, not parties to the instant case, is inappropriate as it would involve disclosure of confidential medical records. Compliance with the discovery order cannot be remedied by a subsequent appeal as respondents will have acquired the privilege information which cannot be undone.

RESPONSE
In response, Edward Sapp agrees that certiorari is the proper remedy for review of the discovery order. Respondent also agrees that the order is overbroad without the addition of specific limitations. He suggests the court remand with appropriate limitations on discovery.
Respondent contends counsel for petitioner has systematically instructed witnesses not to answer questions concerning the hospital's prior knowledge of Dr. Gooding's alcoholic condition gained from hospital committees. He maintains there is no statutory impediment to discovery of names of witnesses who testified before medical review committees and governing boards investigating both prior incidents or the incident giving rise to the lawsuit. Respondent also contends that his suit for negligent retention does not "arise out of" matters evaluated by committees before Andy Sapp's death. The evidence of Dr. Gooding's alcoholism prior to December 7, 1985 (the date of the incident) along with petitioner's complete effort in preventing any reasonable inquiry into the hospital's knowledge of this condition, creates an "exceptional necessity," "extraordinary circumstances" and "undue hardships" sufficient to support the trial court's conclusion that discovery was appropriate. Respondent points to the initial discovery order denying the motion but still recognizing respondent's right to discovery under certain conditions. Neither party sought review of that order. Respondent proceeded in discovery to gain information concerning the incident itself and the pre-incident drinking problem of Dr. Gooding and the hospital's knowledge of that problem. Gooding admitted he was an alcoholic when accepted by Bay Medical and continued to be a functional alcoholic at the time he treated Andy Sapp. Gooding acknowledged hospital administrators were aware he kept alcoholic beverages in his hospital office. Defense counsel objected to any questions concerning the prior incident reports or reviews, obstructing respondent from obtaining proof of the hospital's knowledge of Dr. Gooding's condition. Dr. Gooding was also directed not to answer questions whether he had ever performed medical procedures while under the influence of alcoholic beverages. Respondent's counsel began having "exceptional" difficulty in determining whether Bay Medical Center knew or should have known of Dr. Gooding's condition.

REPLY
In reply, petitioner argues that the instant suit arose not only from the care and treatment of Andy Sapp but also arose from any and all peer review activity prior to that time concerning Dr. Gooding's staff privileges. The heart of respondent's complaint turns on the issue of whether or not Bay Medical Center was negligent in allowing Dr. Gooding to have and retain these privileges. The privilege created for those documents is absolute and not subject to exception. Even if respondent had shown extraordinary circumstances, the information requested is not subject to discovery providing that it involves information and committee activities from which the lawsuit arose. The legislature, and not the courts, has determined that the confidentiality of medical staff committees is so important that it is not discoverable despite the hardship on the parties provided that this information concerns the issues from which the cause of action arose. The legislature felt that the only means to insure open, honest and effective peer review would be to make this procedure confidential. Petitioner questions how respondent can maintain a claim that the peer review process granting Dr. Gooding's staff privileges was negligently performed while at the same time claiming that the documents generated by such committees do not involve the very *311 issues and concerns from which this case arose. Even if the documents were not privileged under the relevant statutes, public policy forecloses such discovery absent a showing of extraordinary circumstances. Respondents have failed to make any such showing.

DECISION
As to the production of peer review documents, sections 395.011(9), 395.0115(4) and 768.40(5), Florida Statutes (1987), respectively provide that decisions by governing boards to grant hospital staff membership or to discipline staff members and peer review committee evaluations of health care rendered by providers "shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which were the subject of evaluation and review by" such board or committee. (e.s.) In Holly v. Auld, 450 So.2d 217 (Fla. 1984), the court held the discovery privilege in section 768.40(4) barred discovery of the review and evaluation by a hospital credentials committee deciding whether to grant staff privileges. In that case, a doctor sued four other doctors contending their statements to the credentials committee had resulted in denial of staff privileges and also had defamed the plaintiff. The plaintiff sought records of the credentials committee. The supreme court held that this discovery privilege was designed to provide that "degree of confidentiality necessary for the full, frank medical review and evaluation which the legislature sought to encourage" by such peer reviews. The court recognized that such a discovery privilege, in both malpractice and defamation actions "will impinge upon the rights of some civil litigants to discovery of information which might be helpful, or even essential, to their causes." Id. at 220. However, the legislature was presumed to have considered that potential detriment in enacting the discovery privilege. See Burton v. Becker, 516 So.2d 283 (Fla. 2d DCA 1987). In Segal v. Roberts, 380 So.2d 1049 (Fla. 4th DCA 1979), cert. denied, 388 So.2d 1117 (Fla. 1980), the plaintiff brought a malpractice action against certain physicians based on a surgical operation performed at Golden Isles Hospital. During discovery, the plaintiff sought production of peer review committee records concerning the physician maintained by a second hospital, Hollywood Memorial Hospital. The court construed the "arising out of" language to mean that discovery would not be limited by the privilege unless the cause of action asserted arose out of those matters which were the subject of the committee's evaluation. The records and evaluations sought were from a committee of a wholly separate hospital from the one in which the malpractice allegedly occurred. The court thus held that "where the circumstances giving rise to the suit were the very ones considered in the committee evaluation, the documents and transcribed proceedings of the said committee hearings are precluded from discovery. But if the subject matter of the suit and the subject of the medical review committee evaluation are not the same, the statute does not apply." Id. at 1052.
However, where the statutory privilege does not arise (as the cause of action is not the subject of the governing board or peer review committee's evaluation or investigations), the courts have held that as a matter of public policy in favor of confidentiality of such records, discovery of those documents would not be allowed absent a showing of "exceptional necessity" or of "extraordinary circumstances" which would justify their production. HCA of Florida, Inc. v. Cooper, 475 So.2d 719 (Fla. 1st DCA 1985); Dade County Medical Ass'n v. Hlis, 372 So.2d 117 (Fla. 3d DCA 1979).
In this case, it is apparent that the suit arises out of a matter, Dr. Gooding's alcoholism, which was or could have been the subject of evaluation and review by the hospital's governing board in granting and continuing hospital privileges or evaluated by a peer review committee as to particular incidents. The very circumstances respondent seeks to discover are the ones considered by the various committees and boards. Respondent seeks this information to demonstrate the hospital's negligence in *312 these matters. Therefore, the statutory privileges attach. The trial court erred in ordering production of such documents.
Section 395.041, Florida Statutes (1987) (and its predecessor section 768.41, Florida Statutes (1985)) provides that the required internal risk management program at each hospital maintain incident reports regarding injuries and adverse incidents in a hospital. Subsection (4) provides, in part, that these "incident reports shall be considered to be a part of the work papers of the attorney defending the establishment in litigation relating thereto and shall be subject to discovery... ." Fla.R. Civ.P. 1.280(b)(2) allows discovery of work product "only upon a showing that the party seeking discovery has need of the material in preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." See Humana of Florida v. Evans, 519 So.2d 1022 (Fla. 5th DCA 1987); Dade County Public Health Trust v. Zaidman, 447 So.2d 282 (Fla. 3d DCA 1983).
Having reviewed the transcript of the hearing and the other parts of respondent's appendix, it does not appear that respondent has made the required showing of undue hardship and an inability to obtain substantially equivalent materials by other means. This issue only involves the production of hospital internal risk management incident reports involving the treatment of Andy Sapp and other patients by Dr. Gooding. The focus of the entire hearing was on production of documents from the peer review committees. The hearing never addressed the production of incident reports. In the order compelling production, the trial court found that respondent had met the requirements of Rule 1.280(b)(2). However, this record does not support that conclusion.
In the second discovery order petitioner is required to respond to interrogatories seeking information about the hospital's internal peer review of Dr. Gooding's alcohol problems. Respondent's assertions that he is only seeking the names of witnesses who testified in such proceedings ignores the broader nature of the questions posed. While discovery of the identity of witnesses who may have relevant information obtained outside the protected spheres of review, no matter how the petitioner learned their identity, may be permissible, that is not the interrogatory posed to petitioner.
The petitions are GRANTED and the discovery orders are QUASHED.
MILLS and BOOTH, JJ., concur.