**Valerio TOYOS, M.D., Plaintiff,**

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Defendant.**

No. 96–2805–CIV.

United States District Court, S.D. Florida.

April 6, 1998.

David H. Gold, Goldfarb & Gold, P.A., Miami, FL, for Valerio Toyos, M.D.

Wm. J. Gallwey, III, Gallwey Gilman Curtis Vento & Horn, P.A., Miami, FL, for Northwestern Mutual Life Ins. Co.

Philip D. Parrish, Stephens, Lynn, Klein & McNicholas, P.A., Miami, FL, for South Miami Hospital.

Janet W. Adams, Adams, Hill, Reis, Adams, Hall & Schieffelin, Orlando, FL, for Pan American Hospital.

Marty Goldberg, Lash & Goldberg, Miami, FL, for Palmetto General Hospital and Hialeah Hospital.

Frederick E. Hasty, III, Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Miami, FL, for Miami Children's Hospital.

Jackson F. McCoy, Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Miami, FL, for Baptist Hospital.

## ORDER COMPELLING PRODUCTION OF DOCUMENTS

MORENO, District Judge.

In this action brought by a doctor for breach of three disability income insurance policies, the Defendant insurer seeks from numerous hospitals health information provided by the insured doctor and contained in the doctor's applications to practice at the hospitals. The Court finds that the Florida statutory medical peer review privilege does not protect from discovery this medical condition information provided by the doctor in a case where the applicant seeks damages under disability income insurance policies.

1. The third-party hospitals involved in this action are South Miami Hospital, Pan American Hospital, Palmetto General Hospital, Miami Children's Hospital, Baptist Hospital, and Hialeah Hospital.

## I. BACKGROUND

On August 18, 1997, Plaintiff Valerio Toyos, M.D., filed an Amended Complaint against Defendant Northwestern Mutual Life Insurance Company seeking damages for breach of three disability income insurance policies issued to Toyos by Northwestern. Plaintiff alleges that on December 12, 1995, he became totally disabled from performing the principal duties of his occupation as a medical doctor and is thus entitled to his disability benefits of $28,100 per month.

Northwestern filed various motions to compel the third-party hospitals[1] to produce, inter alia, all correspondence between the hospital and Dr. Toyos, and all documents related to the application for, or the granting, continuation or termination of Dr. Toyos' privileges. Northwestern eventually limited its request to information provided by Dr. Toyos as to his medical condition and his ability to practice medicine. The insurer further agreed that all other information in the applications could be redacted before production of the documents. The third-party witness hospitals argue that the production of the applications would violate Florida's statutory peer review privilege.

## II. LEGAL ANALYSIS

### A. The Statutory Medical Peer Review Privilege

The various motions to compel at issue in this case present the question of whether the statutory medical peer review privilege established by Florida Statutes §§ 395.0191(8), 395.0193(7), and 766.101(5), prevent an insurance company sued by a doctor for breach of disability income insurance policies from obtaining portions of the doctor's applications and reapplications for staff privileges at various non-party hospitals. For the reasons set forth below, this Court finds that neither the statutory medical peer review privilege nor the public policy rationale enunciated by Florida courts pro-

Baptist Hospital filed a motion for protective order that raises the same issues as Northwestern's motions to compel.

tects such documents from discovery under the specific facts of this case.

Florida Statutes §§ 395.0191(8) (applicable to hospital boards), 395.0193(7) (applicable to a hospital's "peer review panel, a committee, a disciplinary board, or a governing board"), and 766.101(5) (applicable to a medical review committee) protect from discovery the "investigations, proceedings, and records" of the relevant board or committee under certain circumstances. These three statutory provisions contain identical language limiting their applicability in civil actions to those that are "against a provider of professional health services arising out of the matters which are the subject of evaluation and review" by such board, committee or group. Fla. Stat. Ann. §§ 395.0191(8) (West Supp.1997), 395.0193(7) (West Supp.1997), 766.101(5) (West Supp. 1997).

The insurer persuasively argues that the peer review privilege does not apply because this suit is not against a provider of professional health services, nor does it arise from matters that were the subject of evaluation and review by the relevant boards or committees. The insurer correctly points out that even the most liberal reading of the peer review privilege would fail to protect the applications in this action brought by a doctor against an insurance company for breach of disability income insurance policies.

This suit is not a civil action "against a provider of professional health services," as is required for the application of Florida's statutory medical peer review privilege. Rather, it is an action brought by a doctor against an insurance company based on the insurer's breach of the disability income insurance contracts. The hospitals have cited no Florida state cases extending the reach of the statutory peer review privilege to cover an action similar to the one brought by the insured. Therefore, the statutory privilege does not apply given the facts of the instant case. *See, e.g., Dade County Medical Ass'n v. Hlis,* 372 So.2d 117, 119 (Fla. 3d DCA 1979) (interpreting the statutory language "in

a civil action against a provider of professional health services," and concluding that "[s]ince the action below was simply one for damages against those who negligently caused an auto accident, no amount of judicial interpretation can render the statute applicable to this case").[2]

In addition, the statutory peer review privilege also requires that the civil action arise from matters that were the subject of evaluation and review by the relevant board or committee. Florida state courts have found that medical malpractice and defamation cases may arise from matters that are the subject of evaluation and review by the board or committee. *See, e.g., Cruger,* 599 So.2d at 114 (finding that "[t]he medical review committees of [the non-party] hospitals evaluated and reviewed [the defendant doctor's] professional and medical competence to obtain staff privileges," and thus the malpractice action arose from matters that were evaluated by the relevant committee); *Holly v. Auld,* 450 So.2d 217, 221 (Fla.1984) (concluding that the "discovery privilege ... is not limited to medical malpractice actions and, in fact, includes defamation actions arising out of the matters which are the subject of evaluation and review by hospital credentials committees"). *But see Segal v. Roberts,* 380 So.2d 1049, 1052 (Fla. 4th DCA 1979) (finding that, in malpractice case, the statute did not preclude discovery of medical committee documents that were from a hospital different than where plaintiff was treated and that covered a different time period, but public policy did prevent discovery), *cert. denied,* 388 So.2d 1117 (Fla.1980).[3]

The insured's Amended Complaint alleges that he has become totally disabled from performing the principal duties of his occupation, and yet the insurance company has refused to pay him his total disability benefits. This action does not involve Dr. Toyos' competency as a physician, nor does the insurance company seek documents relating to the hospitals' evaluation of Dr. Toyos' competency. Thus, this case does not arise "out of

---

**2.** The *Hlis* court was interpreting § 768.40(4), Florida Statutes, the predecessor to the current § 766.101. *See, e.g., Cruger v. Love,* 599 So.2d 111, 113 (Fla.1992).

**3.** The courts in *Holly* and *Segal,* like the court in *Hlis,* were examining § 768.40(4), the predecessor to § 766.101.

the matters which are the subject of evaluation and review" by the boards or committees, and the non-party hospitals have cited no Florida state cases analyzing this provision that would lead this Court to conclude otherwise. Therefore, the statutory medical peer review privilege does not apply to the facts of this case.

The non-party hospitals argue, however, that the Florida courts' broad interpretation of the statutory medical peer review privilege encompasses the applications sought under the facts of the instant action. For instance, in *Cruger v. Love*, 599 So.2d 111 (Fla.1992), plaintiff, on behalf of her son, sued a doctor for malpractice based on the doctor's alleged negligent treatment of the son's fractured thumb. Like Defendant Northwestern in the instant action, the plaintiff in *Cruger* sought from several non-party hospitals copies of the doctor's applications for privileges at the hospitals, in order to verify certain information that the doctor had provided during discovery. The Supreme Court of Florida found that "a physician's application for staff privileges is a record of the [medical review] committee or [hospital] board for purposes of the statutory privilege." *Id.* at 114. The court thus found the doctor's applications to be protected by the statutory privilege, and based its ruling in part on the policy of encouraging "full candor in peer review proceedings." *Id.*

As the non-party hospitals note, the court in *Cruger* used broad language in describing the statutory privilege. In finding the physician's applications for staff privileges to be privileged, the court explained: "A different interpretation of this provision would completely eviscerate the protection the legislature sought to provide. Ultimately, all peer review committee records would be discoverable. What would not be discoverable in one action because of the nature of the lawsuit would be discoverable in another action. The confidential nature of the peer review proceedings would be obliterated." *Id.* at 115.

This Court agrees with and is bound to follow the *Cruger* court's broad reading of the peer review privilege, but finds it relevant to cases that fall within the statute's specific reach. *Cruger* does not protect in-

formation supplied by a doctor regarding his health in applications for credentialing when the doctor subsequently files suit against an insurance company for breach of a disability policy. While *Cruger* involved a case brought *against a doctor* for malpractice, this action involves the doctor's suit against his own insurance company. Therefore, the facts in *Cruger* placed that case within the reach of the statutory peer review privilege, while these facts do not.

In addition, the *Cruger* plaintiff sought the applications for privileges to verify information the doctor had provided during discovery. *See id.* at 115. The court noted that the plaintiff could verify the information at issue using sources other than the applications for privileges. Here, the insurance company cannot verify the information that Toyos provided to the hospitals regarding his health without the redacted copies of the applications.

Although the statutory peer review privilege does not protect from discovery a doctor's attestations in his own applications for credentialing in an action brought by the same doctor regarding a disability claim, it may very well apply to materials that would contain the evaluations or conclusions of the relevant boards or committees in the peer review process. However, the Defendant here is not seeking that privileged information.

Furthermore, it is unreasonable to conclude that a doctor will be less truthful as to his medical condition in an application for privileges simply because he knows that his own statements in the application may be subject to discovery if he sues his insurance company for disability benefits. The policy goal of encouraging candor and avoiding a "chilling effect" on the *peer review process* will not be adversely impacted if a doctor's own statements in applications for credentialing or re-credentialing are subject to discovery in an action by the doctor for disability benefits.

As the non-party hospitals assert, other Florida courts have also used broad language in discussing the applicability of the privilege. For instance, *Miami Heart Insti-*

*tute v. Reis,* 638 So.2d 530 (Fla. 3d DCA 1994) involved an action by a doctor against a medical center and two of its administrators for defamation, breach of contract, and tortious interference with a business relationship. The doctor alleged that a letter written by one of the administrators at the defendant medical center was disseminated to the medical review committee of a nonparty medical center that was considering the doctor's application for privileges. The doctor claimed that the letter was a primary reason he was not extended privileges at the Miami Heart Institute, the non-party medical center. The defendants then sought discovery from the Miami Heart Institute of all records relating to the doctor's application for privileges.

*Reis* logically held that the peer review privilege protected the "peers" who "reviewed" the application. *See Reis,* 638 So.2d at 531 (noting that "[a]lthough [Miami Heart Institute] is not a party to the defamation action, it is nevertheless entitled to the full protection of the peer review privilege") (citing *Cruger,* 599 So.2d at 114).

The defendants in *Reis* argued for the creation of an exception to the peer review privilege where "the party who seeks discovery is a defendant who has not chosen to institute litigation but has instead been forced into a defensive position and asserts a need for the records to prove its defense." *Id.* at 531. The court rejected this argument, noting that the "constancy of the privilege, which is thus far absolute, does not vary with the nature of the litigation or the procedural posture of the case, and does not depend upon whether the medical review committee is a party or merely a potential source of information." *Id.* at 532.

Like the defendants in *Reis,* Defendant Northwestern "has been forced into a defensive position and asserts a need for the records to prove its defense." *Id.* at 531. However, *Reis* involved a defamation action brought by a doctor *against a medical center and its administrators,* thus making the action "against a provider of professional health services arising out of the matters which are the subject of evaluation and review" by such board, committee or group.

This suit, on the other hand, is neither against a provider of professional health services, nor does it arise from matters that were evaluated or reviewed by the board or committee. Furthermore, the statement in *Reis* regarding the "absolute" nature of the privilege refers to cases that fall within the statutory requirements or that implicate the public policy of fostering candor and protecting the medical review committees.

The hospitals correctly assert that Florida courts have often applied the statutory privilege despite the adverse impact the privilege may have on a party's ability to prosecute or defend an action. However, the application of the privilege must be consistent with the legislative intent to protect the work of the peer review committees without fear that the committees could be held liable for a perceived error in judgment. The privilege should not be extended to protect a doctor's statements regarding his ability to practice medicine when the physician claims he is disabled. Those disability claims are unrelated to the peer review committee's work, and requiring production of the applications in such cases will not hinder the effective self-policing of the medical community because the committee's review will not be disclosed.

The non-party hospitals further urge this Court to follow the decision of another court in this district in a similar case. In *Martinez v. Provident Life and Accident Ins. Co.,* 174 F.R.D. 502 (S.D.Fla.1997) (King, J.), a physician brought an action for breach of contract and declaratory relief against his insurance company regarding its failure to pay disability benefits. Although Judge King relied on the statutory privilege, he did not specifically analyze whether that case was a civil action "arising out of matters which are the subject of evaluation and review by" the relevant board or committee. This Court's conclusion that the instant action is not a civil action "against a provider of professional health services arising out of matters which are the subject of evaluation and review" by the board or committee compels a finding that the statutory privilege is inapplicable.

## B. Public Policy Arguments

However, as the hospitals argue, Florida courts have often used public policy reasons to prevent the disclosure of peer review materials, even when the statutory privilege does not apply, absent a showing of "exceptional necessity" or "extraordinary circumstances." *See, e.g., Mercy Hosp. v. Department of Professional Regulation,* 467 So.2d 1058, 1060 (Fla. 3d DCA 1985) (finding that even though statutory privilege did not apply, materials still may not be subject to discovery absent a showing of "exceptional necessity" or "extraordinary circumstances," but concluding that in-hospital peer review committee reports and records were not privileged and were subject to production pursuant to subpoenas *duces tecum* issued by the Florida Department of Professional Regulation in connection with a disciplinary investigation of two physicians); *Segal,* 380 So.2d at 1052 (finding that "[a]lthough the statute is not applicable in this case, we nevertheless hold ... that many .of the matters sought here are not subject to discovery as a matter of public policy"); *Hlis,* 372 So.2d at 119 (noting that the "non-applicability of the statutory privilege does not mean, however, that we may or should ignore the considerations of public policy which informed the enactment of the statute," and concluding that defendants failed to make the showing of "exceptional necessity" or "extraordinary circumstances" to justify production of the documents at issue).

The Court determines that the insurer has made a sufficient showing of "exceptional necessity" or "extraordinary circumstances" to justify production of the small portions of the applications that contain the insured physician's statements relevant to any disabilities. Dr. Toyos claims in this action that he is unable to perform the principal duties of his occupation, yet he may be representing to various third-party hospitals that he has "no physical or mental limitations impairing [his] ability to practice medicine." *See* Plaintiff's Medical Staff Reappointment Application, Mercy Hospital, 1995–1996, dated June 10, 1996, which was produced voluntarily by that hospital. This case involves a doctor who seeks to assert one position in this litigation, but who may himself be making contrary representations to the hospitals regarding his ability to practice medicine. The circumstances of this case are sufficiently unique, the potential negative impact on candor in the peer review process is lacking, and the insurer's need for the applications is sufficiently compelling to warrant the production of the limited information in the insured's applications.

The court in *Hlis* explained that "it is important, perhaps indispensable, to the achievement of the committee's purposes that its proceedings remain confidential. It is obvious that both complaints and free discussion about the activities of physicians would be markedly discouraged if their contents were to be held open to public perusal." *Hlis,* 372 So.2d at 119. These valid concerns are not implicated under the facts of the instant case. Allowing hospitals to use the privilege as a shield to protect certain information attested to by doctors in their applications for credentialing in cases where doctors sue insurance companies for breach of disability income insurance policies would not encourage candor in the peer review process. Rather, extending the privilege to cover the instant action would actually discourage candor if doctors knew they could make potential misrepresentations regarding their medical condition in applications that would never be subject to discovery.

## III. CONCLUSION

Neither the statutory medical peer review privilege, nor the public policy supporting the protection of peer review documents, precludes from discovery the information sought by the insurer in this case. Therefore, it is

ADJUDGED that the various motions to compel are GRANTED and the motion for protective order is DENIED.