748 So.2d 303 (1999)
Gene TORMEY, Appellant,
v.
Kelli Scott TROUT and Allstate Insurance Company, Appellees.
Allstate Insurance Company, Appellant,
v.
Kelli Scott Trout, Appellee.
Nos. 97-3271, 97-3782, 98-2314.
District Court of Appeal of Florida, Fourth District.
October 6, 1999.
Rehearing Denied January 24, 2000.
*304 David B. Pakula of Fazio, Dawson, Di-Salvo, Cannon, Abers & Podrecca, Fort Lauderdale, for Gene Tormey.
Christopher Lynch of Angones, Hunter, McClure, Lynch, & Williams, P.A., Miami, for Allstate Insurance Company.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Matthew D. Weissing of Montero, Finizio, Velasquez, Weissing & Reyes, P.A., Fort Lauderdale, for Kelli Scott Trout.
SHAHOOD, J.
This opinion addresses the consolidated appeals in case numbers 97-3271, 97-3782 and 98-2314. Case numbers 97-3271 and 97-3782 are the appeals from the final judgment and amended final judgment awarding damages to appellee, Kelli Scott Trout (Trout), in the amount of $1,418,000 in compensatory damages and $20,000 in punitive damages; case number 98-2314 is an appeal from the Final Judgment on Costs in favor of Trout in the amount of $11,905.23. We affirm as to all issues raised by appellants, Allstate Insurance Company (Allstate) and Gene Tormey (Tormey), writing only to discuss one issue raised by both appellants.
Appellants contend that the trial court erred in denying their motions for a new trial and/or remittitur due to Trout's "improper and prejudicial" cross examination of appellants' expert witness, Dr. Roger Schnell, whose credibility, according to appellants, was "effectively destroyed" with the jury.
This action was brought by Trout against Tormey and Allstate to recover damages resulting from a 1993 automobile accident in which Tormey's vehicle struck Trout's vehicle from the side at an intersection. Although Trout had no visible injuries and did not receive medical treatment at the scene, she saw a doctor the day after the accident complaining of pains in her head, neck, and back.
In 1995, approximately two years after the accident, Trout underwent an MRI which showed a thoracic "syrinx," a fluid-filled cyst or cavity, in the thoracic area of the spinal cord. Dr. Waden Emery, a neurologist and Trout's expert at trial, opined that a syrinx may be congenital or post traumatic. It was Dr. Emery's opinion that Trout's syrinx was not congenital, *305 but was caused by the accident. The fact that Trout did not have pain at the scene or on the night after the accident did not affect his diagnosis because, as he explained, it takes time, usually up to 72 hours, for the spinal cord swelling to set in and reach its peak. Although he could not predict with certainty what would happen in Trout's case, Dr. Emery stated that in 50% of the patients with such a condition, the syrinx will enlarge over the lifetime of the patient and require surgical decompression. Any activity from simply coughing or riding a bicycle could cause the syrinx to grow. In Dr. Emery's opinion, Trout should, therefore, be monitored carefully with MRI scans every year for five years, and then every two years after that if the syrinx does not grow. She should also limit activities which would increase intra-abdominal pressure, such as scuba diving and vaginal child delivery.
Appellants' expert neurologist was Dr. Roger Schnell, who had performed a pretrial examination of Trout. While he agreed that Trout's MRI scan does show an obvious thoracic syrinx, he opined that the syrinx was congenital and not caused by the trauma of the accident. Dr. Schnell testified that syrinxes produced by trauma are very rare and, in those instances when they do occur, the trauma is severe. For example, in this accident, Trout would have had to have been thrown out of the car. Dr. Schnell concluded that Trout did not sustain any permanent neurologic disability and that the syrinx was not producing any of the symptoms about which Trout had complained. He found no reason to limit her activities or require her to have continuing medical treatment or care.
Tormey's counsel commenced direct examination of Dr. Schnell with a somewhat extensive overview of his qualifications, especially focusing on the doctor's extensive knowledge in MRI interpretation. Dr. Schnell spoke of the many papers he had published in his field, the many courses he had taught, and the fact that he was involved in establishing the first MRI sites in Broward County at Broward General Medical Center and Coral Ridge MRI. Dr. Schnell estimated that, in his career, he has interpreted between thirty-five and forty thousand MRI's.
On cross-examination of Dr. Schnell, after a general discussion about syrinxes, counsel for Trout inquired as follows:
Q. Doctor, you were recently disciplined by the Department of Medicine for one of your interpretations of an MRI, were you not?
A. Yes. I missed an interpretation on an MRI, yes.
Q. You were accused of gross or repeated malpractice, were you not?
Both Allstate and Tormey moved for mistrials arguing that they were caught by surprise with this disciplinary information, and that the information should have been revealed at Dr. Schnell's deposition two weeks prior. Trout's counsel argued that the evidence is relevant to the issue of Dr. Schnell's credibility since he was testifying here about his interpretation of Trout's MRI. Appellants' counsel countered that there was no dispute about the results of the MRI in this case, i.e., that Trout has a syrinx; instead, the issue is what caused it.
Outside the jury's presence, continued questioning of Dr. Schnell revealed that the administrative complaint was filed against him in 1994 and involved the misinterpretation of a brain scan. Dr. Schnell had admitted to the misinterpretation and settled the complaint agreeing to pay a fine and to take twenty hours of continuing medical education on MRI interpretation. His license was never suspended as a result of the case.
The trial judge deferred ruling on the motions for mistrial until after the verdict, and ultimately denied the motion as well as appellants' motion for a new trial and/or remittitur.
We begin our analysis with the premise that trial courts enjoy broad discretion in considering motions for new trial. *306 Baptist Mem'l Hosp., Inc. v. Bell, 384 So.2d 145 (Fla.1980). A decision will not be overturned absent a showing that the trial court abused its discretion. Cloud v. Fallis, 110 So.2d 669 (Fla.1959). Likewise, matters relating to examination of witnesses are within the trial court's sound discretion. Metropolitan Dade County v. Zapata, 601 So.2d 239, 243 (Fla. 3d DCA 1992). A judgment will be reversed as a result of evidentiary errors only when it appears that such errors injuriously affected the substantial rights of the complaining party. Forester v. Norman Roger Jewell & Brooks Int'l, Inc., 610 So.2d 1369 (Fla. 1st DCA 1992) (citing Parsons v. Motor Homes of America, Inc., 465 So.2d 1285, 1290 (Fla. 1st DCA 1985)). On appeal, the appellant must demonstrate not only error in improperly admitting evidence, but also prejudice from such admission. Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Meeks, 560 So.2d 778, 782 (Fla. 1990).
We find that the questions propounded to the witness on cross examination were improper. Evidence of particular acts of misconduct may not be introduced to impeach the credibility of a witness. See Farinas v. State, 569 So.2d 425, 429 (Fla.1990). Inquiries into a witness' character must go only to the witness' reputation for truth and veracity. Id.; see also King v. Byrd, 716 So.2d 831, 835 (Fla. 4th DCA 1998) (error for trial court to allow defense counsel to cross examine plaintiff's expert witness with questions concerning past disciplinary proceedings since such questions are an improper attack on the witness' credibility).
After reviewing the entire record in this case, we agree with the trial court that the one question concerning Dr. Schnell's disciplinary action "was not so pervasive as to require the granting of a mistrial or new trial especially in light of the other abundant evidence upon which the jury could have weighed this doctor's testimony." As such, we find the error was harmless. See generally Sudderth v. Ebasco Servs., Inc., 510 So.2d 320 (Fla. 4th DCA 1987).
Affirmed.
WARNER, C.J., and CHAVIES, MICHAEL B., Associate Judge, concur.