773 So.2d 1272 (2000)
LIBERTY MUTUAL INSURANCE COMPANY, Appellant/Cross-Appellee,
v.
Jeffrey WOLFSON and Judy Wolfson, his wife, Appellees/Cross-Appellants.
No. 4D00-938.
District Court of Appeal of Florida, Fourth District.
December 27, 2000.
Rosemary B. Wilder and Richard A. Sherman of Richard A. Sherman, P.A., and Cindy Shatkin Avidan of Law Offices of Ponzan & Avidan, Fort Lauderdale, for appellant/cross-appellee.
Lauri Waldman Ross of Lauri Waldman Ross, P.A., Miami, and William C. Ruggiero of Law Offices of William C. Ruggiero, Fort Lauderdale, for appellees/cross-appellants.
SHAHOOD, J.
This is an action by an insured, Jeffrey Wolfson (Wolfson), against his uninsured motorist (UM) carrier, Liberty Mutual Insurance Company (Liberty Mutual), seeking coverage for injuries he sustained when an unidentified motorist struck him while he was walking. A jury trial resulted in a verdict in favor of Liberty Mutual, but the trial court granted Wolfson's motion for new trial.
Liberty Mutual appeals, arguing that the trial court erred in granting the motion for new trial based on improper opening and closing comments made by Liberty *1273 Mutual's counsel. Wolfson has filed a cross appeal, asserting error in the admission of evidence that his physician was convicted for narcotics sale, error in permitting evidence that Wolfson's expert's license was temporarily suspended after a peer review process, and error in allowing Liberty Mutual's accident reconstructionist to comment on Wolfson's credibility. We affirm, without discussion, the trial court's rulings on all issues raised in the appeal and cross appeal, except the issue relating to evidence from the doctor's peer review process, which we address in this opinion, for the court's benefit on retrial.
Wolfson sustained injuries when an unidentified motorist struck him while he was walking to his car; the force propelled him up and onto the hood of his car. Evidence of the extent of Wolfson's damages was introduced through three doctors, one of whom was Dr. Gelbard, the subject of the following discussion.
Just prior to Dr. Gelbard's testimony, it came to light that Liberty Mutual's counsel was involved in another case with Dr. Gelbard and had learned in that case about a peer review of Dr. Gelbard, which was underway at the hospital. Wolfson moved to exclude any testimony concerning the peer review. Liberty Mutual argued that the fact that Dr. Gelbard's privileges to perform surgeries at certain hospitals had been suspended was relevant to the issue of his competence.
Even though she did not have corroborating documentation to prove it, defense counsel planned to ask Dr. Gelbard whether it was true that his privileges had been suspended. Counsel assured the court that she could produce documentation at a later date. The court allowed counsel to pursue the line of questioning about Dr. Gelbard's peer review process, but ordered her to produce evidence to support her position in five days or suffer a mistrial if the jury entered a verdict in favor of the defendant.
Dr. Gelbard addressed the court during the sidebar conference, and explained that the peer review process is privileged and he cannot be asked about it. The court responded that if Dr. Gelbard was going to testify as an expert in this case, then the issue of suspension was relevant to his qualifications. The doctor explained to the court that during the peer review process, his privileges were temporarily suspended pending review, but they were reinstated at the end of the review. The doctor contended that having to disclose even the temporary suspension of his privileges waived his peer review privilege. The court agreed, but ruled that Liberty Mutual certainly had the right to tell the jury that Dr. Gelbard's privileges had been suspended because, on the other hand, if he had privileges all over the country, Wolfson would certainly wish to point that fact out.
Thereafter, Liberty Mutual's counsel questioned Dr. Gelbard about the suspension of his privileges to perform surgery in certain Broward hospitals and, specifically, the peer review process. Dr. Gelbard maintained, even during questioning, that information concerning the peer review process was privileged, but, when reminded by the court of its ruling, Dr. Gelbard reluctantly testified that his license had been temporarily suspended during the review, and then permanently reinstated following the review.
It was error for the trial court to compel Dr. Gelbard to testify about the peer review process, not only because such was an improper attack on his credibility, see Tormey v. Trout, 748 So.2d 303 (Fla. 4th DCA 1999), but also because information about the peer review process is privileged. See § 766.101(5) Fla. Stat. (2000).
Section 766.101(5), Florida Statutes (2000), states, in relevant part,
The investigations, proceedings, and records of a committee as described in the preceding subsections shall not be subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional *1274 health services arising out of the matters which are the subject of evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions, or other actions of such committee or any members thereof.
The peer review process is a system designed to keep health care costs low by encouraging self-regulation in the medical profession. See Holly v. Auld, 450 So.2d 217, 220 (Fla.1984). A limited guarantee of confidentiality for the information gathered during a peer review is necessary to ensure meaningful review. Id. at 220. To that end, the discovery privilege provided in the statute applies not only to medical malpractice actions, but also to "defamation actions arising out of the matters which are the subject of evaluation and review by hospital credentials committees." Id. at 221. See also Bayfront Med. Ctr., Inc. v. State, Agency for Healthcare Admin., 741 So.2d 1226, 1228 (Fla. 2d DCA 1999)(The privilege and confidentiality of "peer review" records have consistently been construed broadly to protect the integrity of the "peer review" process).
Although the peer review privilege is generally confined to malpractice actions and defamation actions arising out of the matters which were the subject of the review, the policy behind the privilege requires courts faced with this issue to tread with caution. Consequently, in order to justify production of material relating to the peer review process in proceedings where the privilege does not expressly apply, one must make a showing of "exceptional necessity" or of "extraordinary circumstances." See Dade County Med. Ass'n v. Hlis, 372 So.2d 117, 121 (Fla. 3d DCA 1979); see also Segal v. Roberts, 380 So.2d 1049, 1052 (Fla. 4th DCA 1979)(In proceedings where the cause of action does not arise out of matters which were the subject of the peer review, the privilege nevertheless applies, as a matter of public policy, except in the "most necessitous circumstances").
Hlis was a personal injury case in which John Hlis sued certain defendants for damages resulting from an automobile accident. Id. at 118. The defendants sought discovery of "any and all records" pertaining to Hlis' two treating physicians. Id. The Dade County Medical Association requested a protective order to preclude discovery of Ethics Committee records relating to Hlis' two treating physicians. Id. at 118-19. The trial court denied the motion, and ordered that the records be produced. Id.
Dade County Medical Association filed a petition for writ of certiorari, which the Third District Court of Appeal granted. Id. at 121. The court noted that the statutory privilege did not apply "[s]ince the action below was simply one for damages against those who negligently caused an auto accident," but nevertheless held that the party seeking production of such documents would not be entitled to them absent a "showing of exceptional necessity" or "extraordinary circumstances." Id. at 121. The basis for the court's decision was the public's overwhelming interest in maintaining the confidentiality of the medical review committee meetings. Id. at 119-20. Only then will the free flow of ideas and constructive professional criticism, which is invaluable to the process, be ensured. Id. at 120.
In the present case, Wolfson sought damages for injuries sustained in an "auto" accident. As in Hlis, "no amount of judicial interpretation can render the statute applicable to this case". Hlis, 372 So.2d at 119. Nevertheless, absent a showing by Liberty Mutual of exceptional necessity or extraordinary circumstances, which did not occur in the trial below, it was error for the court to allow defense counsel to question Dr. Gelbard about the suspension of his privileges due to the peer review process. *1275 Thus, we affirm the trial court's grant of a new trial, and direct that in future proceedings any reference to the peer review process concerning Dr. Gelbard not be admitted.
AFFIRMED.
WARNER, C.J., and HAZOURI, JJ., concur.