622 So.2d 99 (1993)
Thomas J. MURPHY, Sr., Appellant,
v.
John F. MURPHY, Appellee.
No. 92-03112.
District Court of Appeal of Florida, Second District.
July 23, 1993.
*100 Dale L. Bernstein, New Port Richey, for appellant.
Donald F. Kaltenbach, P.A., and Stephen R. Williams, New Port Richey, for appellee.
BLUE, Judge.
Thomas J. Murphy Sr. (Thomas), the defendant below, appeals an adverse jury verdict and judgment rendered in favor of his stepfather, John F. Murphy (John). Thomas contends, and we agree, a new trial is required because of the prejudicial conduct of counsel for John. Thomas' other contentions are either without merit or moot as a result of our holding. We reverse the judgment and remand for a new trial.
This case involves a bitterly contested intra-family dispute in which John sued his step-son Thomas. John alleged that Thomas wrongfully converted various assets. All of the funds at the time of conversion were titled jointly in the names of Thomas and John.
A review of the record plainly reveals that counsel for John, although warned repeatedly, overstepped the boundaries of advocacy in expressing his personal views before the jury. It is also apparent the trial judge exerted great patience and effort in a vain attempt to control this improper conduct. The following occurred during the plaintiff's case in chief on direct examination of Thomas:
BY MR. KALTENBACH:
Q Mr. Murphy, Tom Murphy, was your dad glad to see you?
A Yes, he was.
Q And?
A And I in turn was glad to see him.
Q I bet you were.

MR. BERNSTEIN: Objection.
THE COURT: Sustained. Ask questions, don't make comments.
MR. KALTENBACH: Agreed.
Later during the direct examination of Thomas other inappropriate comments were made:
BY MR. KALTENBACH:
Q Savings account, you take any money out of the joint savings account?
A Yes, I did.
Q How much?
A $17,500.
Q How did you come up with that figure?
A I wanted to leave him some money so he had enough money for his current needs.
Q That was gracious of you.

MR. BERNSTEIN: Objection, Your Honor.
THE COURT: Sustained. Counsel, refrain from your comments.
Again, during direct examination of Thomas the court found it necessary to admonish counsel:
BY MR. KALTENBACH:
Q Well, you saw another name on the account?
A Yes.
Q Somehow that must have concerned you in some way?
A I was there to protect my interest, because she could go down and do the same by withdrawing the funds, just like I could.
Q If she's like you, she would.

MR. BERNSTEIN: Objection, Your Honor. Approach the bench.
BENCH CONFERENCE:
THE COURT: You're pushing me on this.

*101 MR. BERNSTEIN: I'm moving for a mistrial.
THE COURT: I'm going to deny the motion for mistrial. I may not, if we have more comments of this nature.
MR. BERNSTEIN: Thank you, Judge.
During the defendant's case in chief on cross-examination of Thomas, opposing counsel persisted in making improper remarks. Before trial, counsel for John raised a motion in limine concerning statements made by Thomas' mother, who is now deceased. The trial court granted the motion, but outlined under rule 90.602, Florida Evidence Code, testimony which would be allowed. Regardless of this ruling, counsel for John made unwarranted comments concerning permissible testimony:
BY MR. KALTENBACH:
Q It's so convenient, you're saying what your mother told you, but we can't hear her today can we?

A No. If she were alive, you wouldn't hear her either. It wouldn't be happening.
Q Absolutely, it wouldn't be happening.

Later during this cross-examination the following exchange occurred:
BY MR. KALTENBACH:
Q Mr. Tom Murphy, if these were your monies, why did you have to slide into town unannounced?

MR. BERNSTEIN: Objection to the characterization, this is inflammatory and prejudicial. Counsel has done this repeatedly today.
THE COURT: Sustained.
BY MR. KALTENBACH:
Q Mr. Murphy, if these were your monies, why did you come into town unannounced, admittedly lied to your stepfather, dad, as to why you were down here, and took out the monies without talking to him about it, and not just some of the money but all of them except for 1300 and some dollars? Why?
A To protect my interests.
Q All of that is yours, Mr. Murphy?
A I would say the bulk of it is.
Q But you took all of it.
A I'm not saying that I didn't take all of it.
Q All except $1300.
A I agree with that.
Q $1300, Mr. Murphy?
A I took $17,000 and $10,000.
Q I think you took all of it because you wanted all of it.

MR. BERNSTEIN: Objection, Your Honor.
THE COURT: Sustained.
MR. KALTENBACH: No further questions.
THE COURT: I am not going to advise you again. Don't make comments, just ask questions. I will give you opportunity to make a closing argument.
MR. BERNSTEIN: I would like to renew my former motion.
THE COURT: Approach the bench.
BENCH CONFERENCE:
MR. BERNSTEIN: I don't know how fair a jury can be, after listening to all of this. This is inflammatory, flailing at him, flailing at him. This is grounds for a mistrial, Your Honor. I would hate to have a mistrial, but I don't think we can get a fair trial.
THE COURT: I'm going to deny the motion for mistrial. Let's be clear about it at this point. If there is any more of it, we are not only going to have a mistrial, we are going to have a question of contempt of court also. Having made the admonition I did in front of the jury, I am not going to order a mistrial at this time.
The following are excerpts from the closing argument presented to the jury by counsel for John. Although there was no objection, the argument was unquestionably improper and highly prejudicial. See Schubert v. Allstate Ins. Co., 603 So.2d 554 (Fla. 5th DCA 1992); Maercks v. Birchansky, 549 So.2d 199 (Fla.3d DCA 1989)
If all this is so right and so good, why did Tom Murphy have to slide into town *102 unannounced, go into the apartment, park his car down the way? And he said he lied as to why he was here. If this was all so right, why lie about it? Why be a sneak about it? Why be a thief about it?
He went over to the bank, that's his business, his dirty business, he went over to the bank, got in the safety box and cleaned it out.
On May 20th, 1991, Mr. John Murphy was robbed, unfortunately, by his own son.
Now, what I would like to have us do is send a message. The message is this: That I want John Murphy to know that justice does prevail, that he will get justice here today, after what has been done to him. Also, I want to send a message to the community, to anyone else that has that kind of depraved mind, so they won't think they can get away with stealing some elderly folks monies. This is what I'm looking for on behalf of Mr. Murphy, for damages.
We are cognizant of the glamorization of the "cowboy" litigator. We believe, however, that a trial jury should not resemble a "Shoot-out at the OK Corral". What we believe is of course irrelevant, we are pleased it is also the law. A similar question concerning prejudicial comments of counsel was presented to our supreme court in Seaboard Airline Co. v. Strickland, 88 So.2d 519 (Fla. 1956). As in Seaboard, the comments complained of in the instant case were not all objected to at trial. The following quote from the opinion, with minor changes, could be our opinion in this case were we capable of writing with the same reserve on the subject.
While we are committed to the rule that in the ordinary case, unless timely objections to counsel's prejudicial remarks are made, this court will not reverse the judgment on appeal, however, this ruling does not mean that if prejudicial conduct of that character in its collective impact of numerous incidents, as in this case, is so extensive that its influence pervades the trial, gravely impairing a calm dispassionate consideration of the evidence and the merits by the jury, this court will not afford redress. In this state of the record, even though the Brittingham correspondence was admissible, the prejudicial remarks of counsel, including the statements made in argument amounting to testimony in the case, require a new trial. Courts are conscious of the fact that without partisan zeal for the cause of his client, counsel in many instances could have little success in properly representing litigants in sharply contested cases, but his conduct during the cause must always be so guarded that it will not impair or thwart the orderly processes of a fair consideration and determination of the cause by the jury.
88 So.2d at 523.
We are sympathetic with trial judges who are faced with extensive trial dockets and pressured to see that cases are disposed of quickly and efficiently. We also recognize the cost to litigants when a mistrial or new trial is granted. However, unless trial judges are willing to grant mistrials or new trials based upon prejudicial conduct of counsel, there will be no elimination of such conduct.
We conclude the conduct of counsel for John deprived the parties of a fair and dispassionate trial by jury. Accordingly, we reverse and remand this matter for a new trial.
FRANK, C.J., and RYDER, J., concur.