ON MOTION FOR REHEARING

RAMIREZ, J.
The appellees’ motion for rehearing is granted, the original opinion in this case, filed on September 27, 2000, is vacated, and the following corrected opinion is substituted therefor.
Plaintiff Robert Mitchell appeals a final judgment entered on a jury verdict in favor of three medical malpractice defendants, Dr. Robert Bonnell, Dr. Jose C. Medina, and SPI Managed Care, Inc. Because we decide that the trial court abused its discretion in limiting Mitchell’s theories of liability and his ability, to cross examine an important defense witness, errors which we believe were harmful under the circumstances of this case, we reverse the final judgment on appeal and remand this case for a new trial.
In early 1994, Mitchell went to the office of his primary care provider, appellee SPI Managed Care, Inc., for a check-up. He was seen there by Dr. Medina and was given a routine blood test which indicated a low white-cell blood count. Mitchell complained of migraine headaches and was given medicine for the headaches. Nothing was discussed about the low blood count. He returned to SPI’s office in May 1994, complaining of sinus congestion. He was again seen by Dr. Medina, and blood tests again showed a low white-cell count. Again, nothing was discussed about the low blood count. In early December 1994, Mitchell went back to Dr. Medina, complaining of a persistent cough. He was referred to a pulmonologist, admitted to Deering Hospital and a spinal tap was performed. At that time, Mitchell was also given an HIV test, which came back positive. The spinal tap was also positive for the presence of cryptococcus bacteria in the blood and spinal fluid.
Mitchell was attended in the hospital by appellee Dr. Bonnell, but he was apparently not told about the bacteria in his spinal fluid and blood. He was discharged from the hospital on December 18, 1994, with a prescription for medication which was supposed to control the bacteria, although he thought the medication was for his lungs. Between January 6 and 18, 1995, Mitchell had severe symptoms of headaches and vomiting. These symptoms ultimately resulted in a diagnosis of meningitis. During that period, Mitchell saw Dr. Medina on an out-patient basis on two occasions. Both times he was given a pain shot and told to go home and take his headache medicine. He was also seen by an infec *1294 tious disease doctor during that period, but he was still not diagnosed with meningitis. Mitchell’s symptoms worsened, and, on January 18, 1995, he was readmitted to Deering Hospital. While there, he lapsed into a coma and woke up blind, allegedly due to bacterial meningitis.
Mitchell obtained a medical opinion that the blindness was caused by the untreated meningitis and then filed the present medical malpractice suit against the various health care providers involved in his treatment. He settled with the infectious disease doctors, originally co-defendants in the case. He then proceeded to trial against SPI, Dr. Bonnell, and Dr. Medina only. Their defense was essentially that even if the meningitis had been timely diagnosed, there was nothing that could be done to prevent the blindness and/or it was all the fault of the infectious disease doctors for not arriving sooner at the proper diagnosis—often described as an “empty chair” defense.
At trial, the trial judge precluded Mitchell from eliciting testimony from his expert to the effect that Dr. Medina was negligent for failing to diagnose and start treatment for the cryptococcus bacteria when his white-cell count showed below normal in both the January 1994 and May 1994 blood tests. The defense claimed surprise by this theory, arguing that the pleadings did not sufficiently raise this theory of probable negligence occurring prior to the December 1994 and January 1995 hospitalizations and treatment.
The trial court abused its discretion in the ruling which limited Mitchell’s theories of recovery. The allegations of the operative complaint were broad enough to encompass a theory based on purported medical negligence in Dr. Medina’s failure to timely diagnose and treat the cryptococ-cus infection before it worsened at the end of 1994. Facts supporting this theory were elicited during a pretrial deposition. See Smith v. Mogelvang, 432 So.2d 119, 121-25 (Fla. 2d DCA 1983); Wackenhut Protective Sys. v. Key Biscayne Commodore Club Condominium I, Inc., 350 So.2d 1150 (Fla. 3d DCA 1977); cf. Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., Inc., 366 So.2d 90, 93 (Fla. 1st DCA 1979).
Additionally, during his case-in-chief, Mitchell did not call his infectious disease expert, Dr. Shelly Gordon, as he had already settled with those doctors. The defendants decided that instead of calling their own expert, they would read portions of Dr. Gordon’s deposition. In fact, they presented to the jury the fact that the doctor had been retained by Mitchell. The trial court then permitted defense counsel to read only those portions of the deposition in which Dr. Gordon criticized the care given by the infectious disease doctors who had since settled. Mitchell was prevented from reading, either by way of cross-examination or rebuttal, the other portions of the deposition which included some discussion about fault on the part of the remaining defendants. The court ruled that the deposition testimony Mitchell wanted to present would be cumulative. We hold that Mitchell had the right to present additional portions of Dr. Gordon’s deposition for the purpose of explaining, clarifying, and/or placing in context those limited sections presented by the defense by way of direct examination. The court’s failure to allow this was an abuse of discretion. See Young-Chin v. City of Homestead, 597 So.2d 879, 881 (Fla. 3d DCA 1992); Dempsey v. Shell Oil Co., 589 So.2d 373, 378 (Fla. 4th DCA 1991); Mathis v. O’Reilly, 400 So.2d 795 (Fla. 5th DCA 1981).
Either one of these incorrect evi-dentiary rulings by the trial court standing alone was harmful error which prejudiced Mitchell’s case against all three of the defendants. We therefore reverse this case and remand to the trial court for a new trial.
Reversed and remanded.