832 So.2d 129 (2002)
Erin MANHARDT, as next friend and parent of Christopher Manhardt, a minor, and Erin Manhardt, individually, Appellant,
v.
Shameem TAMTON, M.D., Susan W. Short Pediatrics, P.A., Naples Community Hospital, Inc., and Department of Health and Rehabilitative Services, Collier County Public Health Unit, Appellees.
No. 2D00-2044.
District Court of Appeal of Florida, Second District.
September 4, 2002.
Rehearing Denied December 5, 2002.
Scott Trell of Law Offices of Scott Trell, Miami, and Marvin Weinstein of Grover, *130 Weinstein & Trop, P.A., Miami, for Appellant.
Esther E. Galicia of George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Fort Lauderdale, for Appellees Shameem Tamton, M.D., and Susan W. Short Pediatrics, P.A.
Tricia B. Valles, Ronald J. Lamb, and William E. Hahn of Hahn, Morgan & Lamb, P.A., Tampa, for Appellee Naples Community Hospital, Inc.
Jeffrey D. Kottkamp of Henderson, Franklin, Starnes & Holt, Fort Myers, for Appellee Department of Health and Rehabilitative Services, Collier County Public Health Unit.
COVINGTON, Judge.
The appellant, Erin Manhardt, individually and as next friend and parent of Christopher Manhardt, a minor, brought this medical malpractice action against the appellees, Shameem Tamton, M.D., Christopher's pediatrician; Susan W. Short Pediatrics, P.A., Dr. Tamton's employer; Naples Community Hospital, Inc., the employer of the nurses who cared for Christopher immediately following his birth; and Florida Department of Health and Rehabilitative Services and the Collier County Public Health Unit, the employers of Dr. Auditori, the obstetrician who delivered Christopher. The lawsuit initially arose from physical injuries Christopher suffered upon contracting meningitis at birth. The suit continued, however, subsequent to Christopher's death. After a jury trial, a verdict was rendered in favor of the appellees. Ms. Manhardt now contends that numerous errors vitiated the fairness of the proceedings in the trial court. We agree and reverse.
At 4:30 a.m. on September 15, 1991, Ms. Manhardt presented at Naples Community Hospital for labor and delivery. At that time, she had a history of vaginal Group B strep infection. The infection, however, caused no overt disease in Ms. Manhardt.
Ms. Manhardt's son, Christopher, was born at 11:19 a.m. on the aforementioned date. According to hospital records, Christopher's initial newborn assessment revealed that, for all intents and purposes, he was a normal, healthy, full-term baby. At 3:45 a.m. on September 16, 1991, however, a nurse reported that Christopher was having trouble breathing and that he was beginning to run a fever. The results of a blood culture revealed that Christopher had contracted meningitis caused by Group B streptococci. Antibiotics were thereafter administered to the infant. At 12:50 p.m., he was transferred to another hospital for treatment.
For a time, Christopher survived the meningitis, but he was rendered severely handicapped as a result. Thus, in December 1993, the instant lawsuit was filed for compensatory damages. The complaint alleged that the appellees were negligent in failing to render proper medical care and treatment to Ms. Manhardt and Christopher at the time of Christopher's birth. It was averred that, but for the appellees' negligent care and treatment, Christopher's meningitis and resulting injuries could have been prevented.
Christopher died on November 5, 1996, at age five. In September 1997, Ms. Manhardt filed a third-amended complaint. It essentially alleged, among other things, that but for the negligence of the appellees, Christopher would not have suffered the severe and permanent injuries that culminated in his death.
In November 1999, a ten-day jury trial proceeded on Ms. Manhardt's third-amended complaint. After the jury rendered its verdict for the appellees, Ms. Manhardt filed a motion for new trial. She claimed that various trial errors prejudiced *131 the jury and that the verdict was otherwise against the manifest weight of the evidence. In December 1999, the trial court entered a final judgment upon the jury's defense verdict. In March 2000, a hearing was held on Ms. Manhardt's new trial motion. In April 2000, the trial court denied the motion for new trial, and this timely appeal ensued.
On appeal, Ms. Manhardt contends she is entitled to a new trial on the basis of myriad trial errors. We address two of Ms. Manhardt's claims, in particular. It is our conclusion, however, that a combination of errors and improprieties casts doubt on the integrity of the proceedings in the trial court.
A trial court's ruling on a motion for new trial should not be disturbed on appeal, absent a showing of an abuse of discretion. Brown v. Estate of Stuckey, 749 So.2d 490, 495-96 (Fla.1999); Allstate Ins. Co. v. Manasse, 707 So.2d 1110, 1111 (Fla.1998); Cloud v. Fallis, 110 So.2d 669, 672-73 (Fla.1959). The showing necessary to overturn the denial of a motion for new trial is not as great as that necessary to overturn an order granting such a motion. Castlewood Int'l Corp. v. LaFleur, 322 So.2d 520, 522 (Fla.1975) (citing Cloud, 110 So.2d at 673). "`[D]iscretion is abused only where no reasonable [person] would take the view adopted by the trial court.'" Manasse, 707 So.2d at 1111 (quoting Huff v. State, 569 So.2d 1247, 1249 (Fla.1990)); see also Ramey v. Winn Dixie Montgomery, Inc., 710 So.2d 191, 192 (Fla. 1st DCA 1998) (quoting DeLong v. Wickes Co., 545 So.2d 362, 366 (Fla. 2d DCA 1989)). Nonetheless, a "trial judge should always grant a motion for a new trial when `the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record.'" Brown, 749 So.2d at 497 (quoting Cloud, 110 So.2d at 673); see also McCloud v. Sherman Mobile Concrete Co., 579 So.2d 773, 774 (Fla. 2d DCA 1991); Surety Mortgage Inc. v. Equitable Mortgage Res., Inc., 534 So.2d 780, 782 (Fla. 2d DCA 1988). Under those circumstances, "[t]he trial judge's discretion permits the grant of a new trial although it is not clear, obvious, and indisputable that the jury was wrong." Brown, 749 So.2d at 497.
In this case, counsel for Dr. Tamton asked one of Ms. Manhardt's experts, Dr. Noel, if he had ever been sued. Dr. Noel gave an inaudible response, and counsel for Ms. Manhardt objected. The trial court overruled the objection, and the following exchange ensued:
[Dr. Tamton's Counsel]: Did you think you did anything wrong when you were sued?
[Dr. Noel]: I didn't.
[Dr. Tamton's Counsel]: Did you defend yourself?
[Dr. Noel]: Yes.
At that point, Ms. Manhardt's counsel unsuccessfully moved for a mistrial. Counsel argued that the foregoing line of questioning was irrelevant and prejudicial. The trial court denied the motion. Sometime later, however, the issue was revisited. The trial court then instructed counsel for both parties to refrain from asking any party or expert about prior lawsuits.
The questions propounded to Dr. Noel were irrelevant to Dr. Noel's expertise and otherwise constituted an improper attack on his credibility. See Tormey v. Trout, 748 So.2d 303, 306 (Fla. 4th DCA 1999) (citing Farinas v. State, 569 So.2d 425, 429 (Fla.1990), and holding that, in a personal injury case, cross-examination of medical expert about prior administrative discipline was improper credibility attack); see also Liberty Mut. Ins. Co. v. Wolfson, 773 So.2d 1272, 1273 (Fla. 4th DCA 2000) (stating that credibility of medical expert *132 was improperly attacked when she was asked about peer review that caused suspension of her surgery privileges at certain hospitals). The impropriety was exacerbated by the fact that Dr. Noel, of all the medical experts who testified, was the only witness whom the trial court allowed to be questioned about prior lawsuits. We therefore conclude the jury was likely deceived as to the force and credibility of the medical evidence in this cause and that such deception likely prejudiced Ms. Manhardt's case.
This court also concludes that the prejudice arising from the improper credibility attack on Dr. Noel was compounded by inappropriate commentary from Dr. Tamton's counsel during closing argument. At that time, counsel gratuitously announced and otherwise emphasized that this was Dr. Tamton's first lawsuit. Defense commentary of that nature is usually intended to prejudice a plaintiff's case in the eyes of the jury. See Ridarsick v. Amirkanian, 147 So.2d 580, 581 (Fla. 3d DCA 1962) (involving counsel's misconduct in repeatedly offering evidence that the trial court had already excluded). That is especially true here, given the trial court's instruction prohibiting the mention of prior lawsuits. Untoward practices of the kind at issue can be very effective in medical malpractice cases, which always involve "a battle of expert witnesses." Cenatus v. Naples Cmty. Hosp., Inc., 689 So.2d 302, 304 (Fla. 2d DCA 1997) (citing Lake v. Clark, 533 So.2d 797, 799 (Fla. 5th DCA 1988)).
We take this opportunity to note further concern regarding a comment from Dr. Tamton's counsel as to the "Miami Beach" accent of one of Ms. Manhardt's attorneys. At one point during trial, Ms. Manhardt's counsel, Mr. Weinstein, attempted to impeach Dr. Tamton based on various aspects of her pretrial deposition. In doing so, Mr. Weinstein had some difficulty communicating with Dr. Tamton, who is from India. Because of that difficulty, Mr. Weinstein repeated many of his questions. Thereafter, Dr. Tamton's counsel, Mr. Stevens, began his examination of Dr. Tamton by stating, "Dr. Tamton, I promise you three things: I won't repeat myself, I won't use your deposition, and I won't speak with an accent from Miami Beach...." Mr. Weinstein immediately objected. He argued, among other things, that the remark constituted an improper reference to his religion. Mr. Stevens insisted that he did not intend to cast religious aspersions but only made the comment in jest.
In Ridarsick, the Third District observed that "a question asked during a trial may convey prejudicial information even though the answer is excluded." 147 So.2d at 580 (citing Blanton v. Butler, 81 So.2d 745 (Fla.1955)). We note that, during a trial, prejudicial information can likewise be conveyed by a comment from trial counsel purportedly made in jest. We thus remind counsel, as we have reminded others in the past, that trial conduct "`must always be so guarded that it will not impair or thwart the orderly processes of a fair consideration and determination of the cause by the jury.'" Murphy v. Murphy, 622 So.2d 99, 102 (Fla. 2d DCA 1993) (quoting Seaboard Air Line R.R. Co. v. Strickland, 88 So.2d 519, 523 (Fla. 1956)); see also Anderson v. Watson, 559 So.2d 654 (Fla. 2d DCA 1990).
Therefore, based on the foregoing, we conclude the trial court abused its discretion in failing to grant Ms. Manhardt a new trial. The totality of all errors and improprieties, including those not discussed herein, was pervasive enough to raise doubts as to the overall fairness of the trial court proceedings. Collectively, the errors here were also pervasive enough to prejudice Ms. Manhardt's case *133 as to all of the appellees. See Mitchell v. Bonnell, 770 So.2d 1292, 1294 (Fla. 3d DCA 2000); see also Klose v. Coastal Emergency Servs. of Ft. Lauderdale, Inc., 673 So.2d 81, 83 n. 1 (Fla. 4th DCA 1996).
Accordingly, this cause is reversed and remanded for a new trial. Points on appeal not otherwise discussed are either without merit or are moot because of our holding. See, e.g., Murphy, 622 So.2d at 100.
Reversed and remanded.
BLUE, C.J., and NORTHCUTT, J., concur.