# Third District Court of Appeal

## State of Florida

Opinion filed March 02, 2016.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D14-2854
Lower Tribunal No. 10-14435

————————————

**Hernan Concepcion,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Fleur J. Lobree, Judge.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Jay E. Silver, Assistant Attorney General, for appellee.

Before ROTHENBERG, EMAS, and FERNANDEZ, JJ.

ROTHENBERG, J.

Hernan Concepcion ("the defendant") raises the following three claims in appealing his convictions and sentences for lewd and lascivious molestation of a child under the age of twelve, kidnapping of a child, and lewd and lascivious exhibition (of his penis): (1) the trial court abused its discretion by limiting the defendant's cross examination of the victim's mother; (2) the trial court erred by overruling defense objections to portions of the State's closing argument, which the defendant claims denigrated his defense; and (3) the sentence was vindictive. Because each of these claims are refuted by the record and/or lack merit, we affirm.

## I. The evidence

The State alleged that the child ("VDR") was sexually molested by the defendant in May 2010 in the defendant's apartment during a barbecue that VDR and her mother were attending at the apartment complex where VDR, her mother, and the defendant were living. The defendant's defense at trial was that VDR's mother was a desperate woman who fabricated the allegations and convinced VDR to "go along" with the allegations to get back at (1) the mother's husband, who left the mother for another woman, and (2) the defendant, who refused to allow VDR and the mother, who were facing eviction, to move in with the defendant.

At trial, the jury learned that VDR and her mother had been abandoned by her husband, and that he was not providing them with any financial support. As a

result, VDR and her mother were facing eviction from their apartment unit. Defense counsel claimed that after the mother's husband had left her, the mother, who was a desperate woman, sought comfort from the defendant, who resided in the same apartment complex as VDR and her mother, and eventually the defendant and the mother started to date. Although the defendant did not testify, defense counsel claimed, without any evidentiary support, that the mother, who "was on the verge of eviction," asked the defendant if she could move in with him and the defendant said "no."

VDR's mother testified that after her husband left her, she had sex with the defendant, and although their sexual relationship had ended, they remained friends. In May, 2010, during a barbecue at their apartment complex, the mother lost sight of VDR and went into the defendant's apartment to search for her. The defendant had left the front door of his apartment open to allow the neighbors attending the barbecue to use his bathroom. The mother found VDR in the bathroom standing on the toilet with her jeans and panties pulled down facing the defendant, who had his penis in his hand. The mother grabbed her daughter, and as she was leaving the defendant's apartment, the defendant kneeled down, asked the mother for forgiveness, and requested that she not tell anyone. An hour and a half later, VDR's mother called the police.

Lazaro Cortes, who was also at the apartment complex at the time, testified that he saw VDR's mother crying in the defendant's apartment with the defendant kneeling in front of the mother. After the mother left, the defendant, who appeared nervous, told Mr. Cortes that he had done something bad, but he did not tell Mr. Cortes what he had done.

VDR, who was four years old when these crimes were committed, and eight years old at trial, testified by closed-circuit television. VDR testified that she asked the defendant for a drink during the barbecue, the defendant took her into his apartment, sat her on the kitchen counter, pulled her pants down and touched her "pee pee." The defendant then carried VDR, with her pants still pulled down, into the bathroom, pulled down his zipper, and showed her his "pee pee."

Officer Jay Desai and Detective Azeez Mansour testified that when they responded to the mother's call and made contact with the defendant, the defendant appeared as though he had been crying, said he knew why they were there, and began apologizing.

## II. The errors claimed by the defendant on appeal

### A. Limiting the defendant's cross-examination of the mother

The defendant's defense at trial was that the mother was a desperate woman who fabricated the evidence to get back at her husband for leaving her and the defendant for not allowing her to move in with him. Although the trial court

permitted defense counsel to elicit testimony from VDR's mother on cross-examination about how her husband abandoned her and VDR, failed to support them, and left them destitute and in dire straits and on the verge of being evicted, the trial court did not allow defense counsel to elicit testimony that the mother's husband had left her for another woman.

A trial court's ruling on the admissibility of evidence is reviewed under the abuse of discretion standard. Williams v. State, 967 So. 2d 735, 747-48 (Fla. 2007). Evidence that is relevant to the defendant's theory of defense and questions which probe a witness's credibility are subject to the balancing test set forth in section 90.403, Florida Statutes (2014), which provides that relevant evidence is nonetheless inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." See also Jackson v. State, 25 So. 3d 518, 527 (Fla. 2009).

The trial court found that the reason **why** the mother's husband left her was wholly collateral to the issue of whether the mother fabricated what happened to incriminate the defendant. We agree. In order for evidence to be relevant, it must have a logical tendency to prove or disprove a fact which is of consequence to the outcome of the action. Gibbs v. State, 394 So. 2d 231, 232 (Fla. 1st DCA 1981). Whether the mother's husband left her for another woman bears no logical nexus

as to whether the mother fabricated evidence against the defendant, who had no relationship with the mother's husband. Conversely, testimony regarding the mother's relationship with the defendant, her emotional and financial condition, any prejudice or bias she may have had against the defendant, and her motive to manufacture evidence against the defendant, were relevant and properly admitted by the trial court. Accordingly, we find that the trial court did not abuse its discretion by precluding defense counsel from delving into the fact that the mother's husband left her for another woman.

### B. *Whether the State denigrated the defense during closing arguments*

We find absolutely no support in the record for this claim. The defense repeatedly told the jury that the mother was a desperate woman who had no emotional or financial support, had no income, and was facing eviction, and therefore, she fabricated the evidence to get back at both her husband and the defendant. For example, defense counsel argued that the mother "decided to perpetuate a lie and perpetuate a story" out of desperation; "This is a calculated, meaningful plot that the mother has unfolded for the past four years. This was something out of desperation"; "We know that this is a story. We know that this is a sad fable from the mother herself"; "She makes up a story; a terrible story"; and how do we know "that this was a story that's been concocted?"

The defendant claims that the State's closing argument, which was in response to the defense's closing argument, denigrated the defense. The record, however, demonstrates that the State's arguments were responsive, and were directed to the evidence, and were not personal attacks of defense counsel or improper denigration of the defendant's theory of defense. The State merely argued that the case was about a child who had been victimized by the defendant, and that the evidence did not suggest that the mother had concocted a story or that VDR was lying about what happened that day. These arguments were fair responses to defense counsel's closing arguments and were based on the evidence introduced at trial. See Johnson v. State, 917 So. 2d 226, 228 (Fla. 3d DCA 2005) (finding that the State's closing arguments were permissible comments on evidence and a fair response to the defendant's closing argument).

## C. *Sentencing*

The defendant's claim of vindictive sentencing is equally without merit. The law in Florida is clear—when a claim of vindictive sentencing is raised, the reviewing court must examine all of the surrounding circumstances of a rejected plea and the sentence imposed to determine whether they create a presumption of vindictiveness. Wilson v. State, 845 So. 2d 142, 156 (Fla. 2003). If the totality of the circumstances give rise to a presumption of vindictiveness, then the burden shifts to the State to produce evidence to dispel the presumption. Id. However, if

7

the totality of the circumstances do not give rise to a presumption of vindictiveness, the burden never shifts to the State and the defendant must satisfy his burden to prove actual vindictiveness. Id. at 156 n.8.

The analysis in Wilson begins by considering the following factors:

(1) Whether the trial judge initiated the plea discussions with the defendant in violation of [*State v.*] *Warner*, [762 So. 2d 507 (Fla. 2000)];
(2)  Whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter  by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial;
(3) The disparity between the plea offer and the ultimate sentence  imposed; and
(4)  The lack of any facts on the record that explain the reason for the  increased sentence other than that the defendant exercised his or  her right to a trial or hearing.

Id., 951 So. 2d at 1040-41 (footnotes omitted).

The record reflects that in the instant case the trial court did not initiate plea discussions with the defendant, did not participate in any plea negotiations with the defendant, and did not abandon its neutrality or role as an impartial arbiter.  The trial court did not recommend or urge the defendant to accept the State's plea offer or imply that upon a conviction, the defendant's sentence would be increased because he exercised his right to a trial.  Instead, the record demonstrates that the plea offer was conveyed by the State without any input or comment by the trial court, and the trial court's sole involvement was to colloquy the defendant on the

8

record to verify that the plea had been conveyed to the defendant, what the plea offer was, and what punishment could potentially be imposed upon conviction on each count. As this Court stated in Snow v. Crosby, 851 So. 2d 222, 223-24 (Fla. 3d DCA 2003), where the trial court merely confirms that the defendant understands the terms of the plea offer and the potential sentences he is facing, there exists no presumption of vindictiveness.

Because the defendant failed to establish that the sentences imposed were vindictive, we need go no further because the defendant has not alleged and there is anything in the record to support a finding of actual vindictiveness. We, however, note that there is evidence in this record as to the reason for the disparity between the State's plea offer and the sentences imposed. The State specifically stated at the time it offered the plea that the offer was based on its desire to shield the victim, who was eight years old at the time of trial, from having to testify. The State's explanation is further supported by the child's age and the fact that the victim was permitted to testify via closed-circuit television to minimize the emotional and psychological trauma.

The disparity between the State's pre-trial plea offer and the sentence imposed by the trial court after trial, standing alone, does not create a presumption of vindictiveness nor require resentencing. See Redmond v. State, 970 So. 2d 915, 915 (Fla. 5th DCA 2007) (holding that the imposition of a harsher sentence after

trial than what had been offered by the State pretrial does not create a presumption of vindictiveness); <u>Pagnotti v. State</u>, 821 So. 2d 466, 468 (Fla. 4th DCA 2002) (finding no vindictiveness where the State offered a ninety-day sentence prior to the revocation hearing and the trial court imposed a twenty-year sentence following the hearing). Accordingly, the sentences imposed by the trial court in the instant case, while harsher than what was offered by the State pre-trial, does not create a presumption of vindictiveness or require resentencing.

Affirmed.