ROBERTS, C.J.
Appellant, personal representative of the estate of decedent Lauren Robinson (the plaintiff below), appeals a final judgment for the. defendant, appellee Dillard’s, Inc., *317 alleging multiple errors on the part of the trial court and numerous instances of misconduct at trial on the part of defense counsel and arguing that these effectively denied plaintiff a fair trial. Appellant also appeals the trial court’s denial of plaintiffs motion for directed verdict and the trial court’s admission of delta-v testimony by defendant’s expert accident reconstructionist, Dr. James R. Ipser. We affirm, without discussion, the trial court’s denial of plaintiffs motion for directed verdict and affirm, with discussion, the admission of Dr. Ipser’s delta-v testimony. However, for the reasons given below, we hold that defense counsel’s misconduct was so prejudicial as to warrant a new trial, and we reverse the verdict on this basis.
Background
Plaintiff was involved in a traffic accident in which her vehicle partially collided with a Dillard’s delivery van operated by Timothy Davis, an employee óf Dillard’s. It is undisputed that the drivers were traveling in the same lane of a two-lane highway, Mr. Davis driving directly behind plaintiff at the time of the accident, and that the left front of the Dillard’s van hit the right rear of plaintiffs vehicle. Plaintiff alleged that she never left her lane and that Mr. Davis hit her car as she made a right turn into her driveway; Mr. Davis alleged that plaintiff left her lane, merging into a gore to the left of her and Mr. Davis, and had abruptly turned back into Mr. Davis’s lane, leaving him without enough time to avoid a collision.
Plaintiff sued defendant for damages. After obtaining summary judgment that the accident caused permanent injuries to her shoulder, she proceeded to trial on the issues of whether Mr. Davis negligently caused the accident and whether she also suffered permanent injuries to her back and neck. After a five-day trial, the jury returned a defense verdict answering “No” to the first question,- which- was whether defendant negligently caused the accident.
Appellant timely served post-trial motions raising each of the issues in this appeal. After a hearing, the trial court entered an order denying the post-trial motions without elaboration.
Dr. Ipser’s Delta-v Testimony
Before trial, plaintiff moved to strike or limit the testimony of Dr. Ipser, alleging, in pertinent part, that his opinions concerning delta-v (the change in velocity of the cars on impact) were inadmissible as being, scientifically unreliable, irrelevant, and overly prejudicial under sections 90.702 and 90.403, Florida Statutes (2013). At a day-long hearing on the matter, Dr. Ipser testified that he was not retained by defendant to offer an opinion as to whether the forces produced by a given delta-v would have caused plaintiff to suffer injury, but that he had been retained to reconstruct the accident, to testify to the nature of the physical forces at work, and to help the jury understand the levels of those forces on the human body. The trial court allowed Dr. Ipser to testify to his calculation of delta-v. Over plaintiffs counsel’s objections, Dr. Ipser did so testify at trial. During closing arguments, defense counsel referred to Dr. Ipser’s testimony to argue that “this was not the type of accident that the plaintiff wants you to believe it is” and that “the speed and velocity of [the] impact was minor.”
According to section 90.702, Florida Statutes (2014):
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience,' training, or education may testify about it in the form of an opinion or otherwise if: (1) the testimo.- *318 ny is based upon sufficient facts and data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.
In addition, the trial court is permitted to take judicial notice if the expert testimony has previously been deemed reliable by an appellate court. See Booker v. Sumter Cty. Sheriff’s Office/N. Am. Risk Servs., 166 So.3d 189, 194 (Fla. 1st DCA 2015).
Appellant argues that the trial court erred in admitting Dr. Ipser’s delta-v testimony because the only relevance it could possibly have had was to imply that plaintiff could not have suffered the degree of injury she alleged and that Dr. Ipser was unqualified to offer any testimony that might lead to such a conclusion. In making this argument, Appellant misconstrues the relevant case precedents. In Mattek v. White, 695 So.2d 942, 943 (Fla. 4th DCA 1997), the Fourth District held that Dr. Ipser’s “lack of medical expertise ... rendered] him unqualified to testify that [a] plaintiff had no permanent injury as a result of [an] accident.” Our sister court did not, as Appellant insinuates, rule that jurors were not allowed to take delta-v into account when determining the severity of an impact. Indeed, in Bryant v. Buerman, 739 So.2d 710, 711 (Fla. 4th DCA 1999), just two years after deciding Mat-tek, the Fourth District reversed a verdict after holding that a trial court erred in prohibiting Dr. Ipser from offering expert testimony in a personal injury action. The court noted that Dr. Ipser’s testimony “would have been helpful to the jury” 'precisely because it would have buttressed the defendant’s argument “that [the plaintiffs] injuries could not have been caused by [a] slow-speed, low-impact accident,” id. at 713 (emphasis added), the very sort of argument Appellant objects to Dillard’s having made in the present case.
This Court herself has repeatedly held that while “a biomechanics expert is not qualified to give a medical opinion regarding the extent of an injury,” he “is qualified to offer an opinion as to causation if the mechanism of injury falls within the field of biomechanics.” Gregory Council v. State, 98 So.3d 115, 116-17 (Fla. 1st DCA 2012) (citations omitted) (holding that “because the mechanism of injury (falls and shaking) fell within the field of biomechan-ics,” a biomechanics expert who was not a medical doctor was qualified to opine that a child of the victim’s height and weight could have sustained certain types of brain injuries by falling out of a day bed and that shaking alone could not have caused such injuries). See also Maines v. Fox, 190 So.3d 1135 (Fla. 1st DCA 2016).
Dr. Ipser’s testimony below was well within these parameters; he did not render inadmissible opinions that required medical expertise, and he didn’t even render admissible opinions as to the causal mechanisms of the sorts of injuries plaintiff suffered. To the extent defense counsel “erred” at all in proffering Dr. Ipser’s testimony, it was on the side of caution and, therefore, in Appellant’s favor. Accordingly, the trial court did not abuse its discretion when it allowed Dr. Ipser to testify about the physical forces involved in the accident, and defense counsel did not act improperly when he implied during closing arguments that the jury should take relevant physical forces into account when determining the effect of such on whatever injuries plaintiff suffered.
Comments Regarding Plaintiffs Deposition During Closing Arguments
During closing arguments, referring to plaintiffs testimony that she had tapped her brakes to take her vehicle off cruise *319 control before turning into her driveway, defense counsel told the jury, “Why is that important? We took her deposition for hours and it never came .up.” Plaintiffs counsel objected and requested a sidebar, to which defense counsel replied by turning to the jury, raising his hands and exclaiming, ‘Well, that lasted about 12 minutes.” Plaintiffs counsel moved for a mistrial, arguing that it was improper to refer to the deposition because it had not previously been introduced into evidence and that defense counsel was using this characterization of extra-record evidence to accuse plaintiff of dishonesty. The trial court denied the motion for mistrial, but instructed the jury:
[Disregard the last statement by counsel, something to the effect that there was nothing in [Appellant’s] deposition that had to do with her tapping the brakes to disengage the cruise control. Again, I will remind you again, rely on your memories of what you heard as evidence on every topic, okay?
It is undisputed that defense counsel’s attempted impeachment of plaintiffs credibility by reference to alleged inconsistencies between her trial testimony and her pretrial deposition was improper, as was his open disparagement of plaintiffs counsel after the latter had registered an eminently reasonable objection to the impropriety. While a single improper remark, properly and immediately cured by an instruction by the trial court, will not necessarily constitute adequate grounds for mistrial, we find that it did so in the instant case where the issue of the defendant’s liability essentially hinged on the comparative credibility of two opposing witnesses, plaintiff and Mr. Davis. A finding of harmfulness is especially appropriate when the context suggests that an error was made intentionally. See Howard v. Palmer, 123 So.3d 1171, 1174 (Fla. 4th DCA 2013). Dillard’s has failed to “demonstrate that there is no reasonable possibility that the error contributed to the verdict” and was therefore harmless. Special v. W. Boca Med. Ctr., 160 So.3d 1251, 1256 (Fla.2014). Furthermore, because the inadmissibility of appeal to non-record evidence during closing arguments is such a fundamental and longstanding canon of trial practice and ethics, codified in rule 4-3.4 of the Rules Regulating the Florida Bar, defense counsel’s violation, if not intentional, was at least grossly reckless, particularly because it was committed during closing arguments, when such improper statements are especially likely “to inflame the minds and passions of the jurors so that their verdict reflects an emotional response ... rather than the logical analysis of the evidence in light of the applicable law.” Murphy v. Int'l Robotic Sys., Inc., 766 So.2d 1010, 1028 (Fla.2000) (citing Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985)).
For these reasons, we hold that the trial court abused its discretion when it denied plaintiffs motion for mistrial.
Additional Errors and Improprieties
Although defense counsel’s improper remarks during closing argument constituted a sufficient basis for a new trial, we wish to draw attention to additional errors and improprieties that characterized these proceedings.

Voir Dire

During jury selection, plaintiffs counsel essentially read the standard jury instruction regarding aggravation of preexisting conditions and asked the venire whether anyone would have a problem applying that law, which would require an award for the entire condition if the jury were not ultimately able to decide what portion of the condition was a result of the aggravation. Defense counsel objected, wrongly claiming in front of the venire *320 that “that’s not what the jury instruct!on says.” At sidebar, the trial court mistakenly instructed plaintiffs counsel “You are specifically not allowed during voir dire [to question] the juror concerning the anticipated instruction or theory of law or your understanding of various legal principles.” The issue of whether a trial court may deny counsel the opportunity to question the venire on matters of substantive law is controlled by Lavado v. State, 492 So.2d 1322 (Fla.1986). There, the Florida Supreme Court expressly adopted Judge Pearson’s entire dissenting opinion in Lavado v. State, 469 So.2d 917, 919-21 (Fla. 3d DCA 1985), according to which, “where a juror’s attitude about a particular legal doctrine ... is essential to a determination of whether challenges for cause or peremptory challenges are to be made, it is well settled that the scope of the voir dire properly includes questions about and references to that legal doctrine[J” Id. at 919-20. Since Lavado was decided, this Court has consistently held that denial to counsel of the opportunity to question prospective jurors on their ability to follow the law constitutes abuse of discretion and is grounds for a new trial. See Harrison v. State, 172 So.3d 1018 (Fla. 1st DCA 2015); Morton v. State, 667 So.2d 463, 463 (Fla. 1st DCA 1996); Brown v. State, 614 So.2d 12, 12 (Fla. 1st DCA 1993).

Violation of Accident Report Privilege

Before the start of trial, plaintiff filed a written motion in limine to exclude any statements from the police accident report as hearsay. The trial court granted the motion, ruling that nothing from the report could be elicited during trial without a proffer and ruling in advance. Nevertheless, in reply to a query from defense counsel as to whether plaintiff called for an ambulance at the scene of the accident, Mr. Davis replied, “No. Both the police officer and I asked.” The remark was promptly objected to by plaintiff’s counsel, and the objection was sustained and cured by an appropriate instruction to the jury by the trial court. While it does not appear that Mr. Davis’s improper statement was purposefully elicited, this incident, particularly in light of the rest of defense counsel’s improprieties, evinces a .failure to adequately prepare the witness for trial.

Testimony Concerning How Physician Was Paid

At another pretrial hearing, the, trial court ruled that defense counsel could not question one of plaintiff’s treating physicians, Dr. James Svabek, regarding how his bill had been paid. Notwithstanding this order, when, during cross-examination, Dr. Svabek volunteered that he had been remunerated, defense counsel followed up with the query, “How were you paid for the services?” Plaintiffs counsel’s prompt objection was sustained by the trial court, which rejected defense counsel’s characterization of the pretrial order as having been predicated on the mutual ignorance of both the trial court and counsels as to whether Dr. Svabek had yet been paid.

Insinuation that Appellant Had Previously Received a Speeding Ticket

During defense counsel’s cross-examination of plaintiff, the following exchange took place:
DEFENSE COUNSEL: And is it something that you do every day in setting the cruise control to monitor your speeds going home from work?
PLAINTIFF: Yes, sir, because [police] have radars out there.
DEFENSE COUNSEL: So you set the cruise control on 35 and then 45 every day while coming home from work?
PLAINTIFF: I always did....
*321 DEFENSE COUNSEL: Did you ever get — Strike that.
Outside the hearing of the jury, plaintiffs counsel again moved for a mistrial, arguing that defense counsel’s question suggested to the jury that plaintiff had received a speeding ticket in the -past, information that defense counsel knew would be improper and inadmissible. Defense counsel conceded he-knew the question would draw an objection and “that’s why I didn’t complete it.” He argued there was no prejudice because he never completed the question, and the trial court denied the motion for mistrial.
Cumulative Effect of Errors and Improprieties
“Although the trial court’s ruling is entitled to substantial deference, there is a point where the ‘totality of all errors and improprieties’ are ‘pervasive enough to raise doubts as to the overall fairness of the trial court proceedings.’ ” Bocher v. Glass, 874 So.2d 701, 704 (Fla. 1st DCA 2004) (quoting Manhardt v. Tamton, 832 So.2d 129, 133 (Fla. 2d DCA 2002)). That point was manifestly reached in the instant case. None of the errors or improprieties, besides those of defense counsel at closing argument, individually constituted sufficient grounds for mistrial; some were harmless as a matter of law because they implicated the issue of damages, all were promptly and properly objected to by plaintiffs counsel, and most were remedied by curative instructions by the trial court where appropriate. However, as this Court has previously noted:
Jurors cannot be expected to understand the basis of counsel’s repeated objections. All that is apparent to jurors placed in this position is that frequent objections and sidebar conferences prolong their service, and perhaps limit the information available to the jury. Thus, counsel’s repeated objections to the same type of behavior may well lead the jury to infer that one side of the case is trying to hide or disguise matters that would be useful to the jury.
Bocher, 874 So.2d at 704.
We believe it probable that the cumulative effect of the repeated improprieties, objections, and instructions below was to unduly prejudice jurors by casting improper aspersions on the plaintiffs credibility and the integrity of her counsel.
We hasten to add that plaintiffs counsel did hot exit these proceedings with clean hands either. We decline to enter into a discussion of “who started it,” but we note that plaintiffs counsel’s snide denigration of Dr. Ipser’s professional occupation in the presence of the jury and postings by plaintiffs counsel on his own public Face-book page — which included commentary on the proceedings and the evidence and derogatory references to one of defendant’s attorneys — -were well outside the bounds of professional conduct to which members of our profession are expected to adhere.
Trusting that both parties’ counsels will henceforth conduct themselves with the decorum befitting their profession, we AFFIRM in part, REVERSE in part, and REMAND for new trial.
RAY, J., concurs; LEWIS, J., dissents with opinion.