NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MICHAEL DASKALOPOULOS,      )
                            )
          Appellant,        )
                            )
v.                          )      Case No. 2D17-371
                            )
CITIZENS PROPERTY INSURANCE )
CORPORATION,                )
                            )
          Appellee.         )
_____ )

Opinion filed March 9, 2018.

Appeal from the Circuit Court for
Hillsborough County; Richard A. Nielsen,
Judge.

Michael V. Laurato of Austin & Laurato,
P.A., Tampa, for Appellant.

Angela C. Flowers of Kubicki Draper,
Ocala, for Appellee.


LUCAS, Judge.

          Michael Daskalopoulos appeals the final judgment entered in favor of his

homeowners insurance carrier, Citizens Property Insurance Corporation (Citizens),

following a jury trial on Mr. Daskalopoulos' breach of contract complaint against

Citizens.  Because Citizens' counsel improperly interjected an irrelevant and unpled

issue into the trial, both in his opening statement and during its cross-examination of the plaintiff, we must reverse the court's judgment. Mr. Daskalopoulos is entitled to a new trial.

Mr. Daskalopoulos filed the underlying action seeking damages against Citizens under a property insurance policy. He claimed that his house in Tampa had sustained sinkhole damage that was covered under the terms of his policy. In 2012, Citizens had denied Mr. Daskalopoulos' claim, contending that the damage to this property—which consisted primarily of cracking in the driveway, floor, and walls—was not because of a sinkhole, but the result of some other excluded cause under the policy. In its answer to the complaint, Citizens generally denied Mr. Daskalopoulos' allegations of causation. It later raised six amended affirmative defenses, including that it did not breach its policy as a matter of law; that Mr. Daskalopoulos' mortgage lender, which had initiated a foreclosure action against the property, was an indispensable party; and that any property damage was the result of various other factors.[1] Citizens never asserted a defense sounding in fraud, or misrepresentation, or unclean hands on the part of Mr. Daskalopoulos. Thus, from the pleadings, the issues to be tried between these litigants were quite discrete: was there sinkhole activity that affected this house, and, if so, were the damages Mr. Daskalopoulos claimed in his lawsuit the result of that activity?

During his opening statement, Citizens' counsel began, appropriately enough, by summarizing the issues for the jury's consideration (and in a similarly

_____

[1]Citizens also filed a counterclaim for declaratory relief that it later voluntarily dismissed. By the time the case proceeded to trial, Citizens' affirmative defenses pertaining to excluded causes had become the principal issue in dispute.

succinct fashion as we have in the preceding sentence). But then the presentation took an unexpected turn:

> The evidence, interestingly, is also going to tell you that around the same time Mr. Daskalopoulos reported this claim to Citizens for the alleged sinkhole activity, alleged sinkhole damage, he stopped paying his mortgage on his house.
>
> . . . .
>
> These things coincide. Stopped paying the mortgage and hasn't paid the mortgage since that time back in 2012. Around the same time, he also owned another property.

Mr. Daskalopoulos promptly objected to this line of argument as irrelevant and not within any of the defenses Citizens had pleaded. The trial court sustained Mr. Daskalopoulos' objection, but when Citizens' counsel resumed his opening remarks, he continued to press the same point, leaving it only when the trial court interrupted him:

> Okay. Around the same time, Mr. Daskalopoulos stopped paying the mortgage on his house and hasn't paid the mortgage since then. That coincides with him making this claim to Citizens that there is sinkhole activity —

At the conclusion of Citizens' opening statement, Mr. Daskalopoulos moved for a mistrial, which the trial court denied.

But the matter of Mr. Daskalopoulos' mortgage default and the timing of his insurance claim did not end there. Over objection, the theme emerged again during Mr. Daskalopoulos' cross-examination:

> Q. Isn't it true that before you got your attorneys involved and you came out and filed a claim with Citizens, you had already stopped paying your mortgage?
>
> A. I believe it was around the same time.
>
> Q. Okay. You don't recall whether it was before or after?

A.      It was like, right around the same time.  Exactly, I'm not really positive if it was a week before or a week after.

After Mr. Daskalopoulos was confronted with his prior deposition testimony, he allowed (again, over objection) that he might have stopped paying his mortgage payments prior to filing his insurance claim with Citizens but that he was not exactly sure of the sequence of those events.

When his testimony concluded, the jury posed its only question to Mr. Daskalopoulos, asking whether Mr. Daskalopoulos' policy with Citizens was "an upgrade" from the prior policy he had when the house was purchased in 2006.  The court declined to allow the question, but the question prompted Mr. Daskalopoulos' counsel to again move for a mistrial, noting: "Now the juror's asking about whether he got more insurance or whether he upgraded the coverage. . . .  This is turning into a case about why he filed for foreclosure.  It has nothing to do with the sinkhole case.  Nothing."  The trial court again denied his motion for mistrial.

Ultimately, the jury returned a verdict in favor of Citizens, finding that there was no damage of any kind to the house during the applicable policy period.  The jury never reached the only question presented on Citizens' affirmative defenses, which was whether the house's damage was a result of sinkhole activity or some excluded peril under the policy.  Mr. Daskalopoulos filed a motion for new trial, again arguing that the insertion of Mr. Daskalopoulos' mortgage foreclosure as an issue before the jury deprived him of a fair trial.  The trial court denied Mr. Daskalopoulos' motion and entered the final judgment in favor of Citizens, which Mr. Daskalopoulos now appeals.

We generally review a trial court's denial of a motion for mistrial or motion for new trial for abuse of discretion. See Campbell v. Griffith, 971 So. 2d 232, 235 (Fla. 2d DCA 2008); Manhardt v. Tamton, 832 So. 2d 129, 131 (Fla. 2d DCA 2002); Philip Morris USA, Inc. v. Ledoux, 230 So. 3d 530, 537-38 (Fla. 3d DCA 2017). However, we have observed that "[t]he showing necessary to overturn the denial of a motion for new trial is not as great as that necessary to overturn an order granting such a motion." Manhardt, 832 So. 2d at 131. Our review here is also guided by the general principle that the issues determined in a civil trial should be limited to those set forth in the parties' pleadings. See Bank of Am., Nat'l Ass'n v. Asbury, 165 So. 3d 808, 809 (Fla. 2d DCA 2015) ("Litigants in civil controversies must state their legal positions within a particular document, a pleading, so that the parties and the court are absolutely clear what the issues to be adjudicated are."); Gordon v. Gordon, 543 So. 2d 428, 429 (Fla. 2d DCA 1989) ("An issue that has not been framed by the pleadings, noticed for hearing, or litigated by the parties is not a proper issue for the court's determination.").

In this case, Mr. Daskalopoulos' nonpayment of his mortgage and his bank's foreclosure complaint had nothing to do with any relevant issue to be adjudicated. This was an insurance coverage dispute that revolved around whether a sinkhole had caused cracks in a house. The verdict form in this case—which comprised two questions—reflected the narrow field of issues the parties had framed for determination, and neither of those questions remotely pertained to Mr. Daskalopoulos' nonpayment of a debt. So the fact that Mr. Daskalopoulos may have been in arrears on his house's mortgage was no more relevant to this sinkhole dispute than the house's paint color. Cf. Riedel v. J.R. Watts & Sons, 158 So. 890, 891 (Fla. 1935) ("The

- 5 -

evidence submitted, if it tended to prove any defense, was one of accord and satisfaction. That was not pleaded, and, therefore, such evidence was irrelevant and immaterial and should have been excluded on timely objection being made."); Barrett v. State, 605 So. 2d 560, 561 (Fla. 4th DCA 1992) ("[R]elevancy is founded on materiality, the nexus between a fact being proved *and a disputed issue*, and probativeness, the effect this evidence would have on the existence of that fact." (emphasis added)).

Both at trial and in this appeal, Citizens attempts to bridge the divide between the geological activity underneath Mr. Daskalopoulos' house and the house's foreclosure by arguing that Mr. Daskalopoulos' financial straits reflected a "motive" or "personal interest" on his part to file an insurance claim. As Citizens puts it, "[t]he fact that Plaintiff stopped paying his mortgage . . . logically calls his integrity into question within the circumstances of this case." But Mr. Daskalopoulos' financial interest in the outcome of his civil lawsuit against Citizens was a point that needed no proving, and certainly not through the insertion of an unpled, irrelevant, and inadmissible issue. See generally Valdez v. State ex rel. Farrior, 194 So. 388, 394 (Fla. 1940) ("While the allegations of the answer alleging improper motives behind the institution . . . are voluminous and in strong and impressing language, they are not sufficient to constitute a defense to the suit here . . . . It is generally established that the courts will not inquire into motives which actuate plaintiff in bringing suit."); Midtown Enters. v. Local Contractors, Inc., 785 So. 2d 578, 580-81 (Fla. 3d DCA 2001) (holding that evidence of "pattern of cheating" by contractor in qualifying as a minority-owned business enterprise constituted irrelevant, inadmissible character evidence that was highly prejudicial where "[t]he issues as framed by the pleadings all relate to breach of contract and the claim of

lien"); Jacobs v. Westgate, 766 So. 2d 1175, 1181 (Fla. 3d DCA 2000) (finding error in action for negligent disposition of personal property to admit evidence that the plaintiff had been a bad roommate who bounced checks); SEB S.A. v. Sunbeam Corp., 148 F. App'x 774, 790 (11th Cir. 2005) ("A party's motive is irrelevant to a breach of contract claim under Florida law."); Kobashigawa v. Silva, 300 P.3d 579, 599-600 (Haw. 2013) (holding that the circuit court erred in ruling evidence of a plaintiff's bias, interest, or motive could be used by the jury in considering the plaintiffs' motives in filing their lawsuit because "it is a long-standing principle of law that a plaintiff's motive in filing a lawsuit is otherwise immaterial to resolving the merits of the dispute"); DeMarco v. Univ. of Health Scis./Chicago Med. Sch., 352 N.E.2d 356, 362 (Ill. App. Ct. 1976) ("A party pursuing his legal rights in a legal manner cannot be challenged with respect to the motives which prompt him into action.").  And to the extent an equivalency can be drawn between paying one's debts and one's personal integrity, it was plainly an issue of Mr. Daskalopoulos' character that Citizens tried to frame before the jury, an issue that is ordinarily inadmissible in civil cases.  See Pino v. Koelber, 389 So. 2d 1191, 1193 (Fla. 2d DCA 1980) ("In most civil cases, the majority of courts follow the general rule of refusing to permit character evidence when character is not an issue in the case." (citing J. Wigmore, 1 Evidence § 64 (3d ed. 1940))); Charles W. Ehrhardt, Florida Evidence § 404.3, at 240 (2015 ed.) ("In civil actions, character evidence is inadmissible to prove that a person acted in conformity with his or her character, i.e., to prove the person's conduct.").  If Citizens believed that its insured was pursuing a fraudulent insurance claim—and it all but told this jury it did—then it should have raised that as an affirmative defense before going to trial.  See Fla. R. Civ. P. 1.140(h)(1) ("A party waives all

- 7 -

defenses and objections that the party does not present either by motion under subdivisions (b), (e), or (f) of this rule or, if the party has made no motion, in a responsive pleading except as provided in subdivision (h)(2)."); Heartwood 2, LLC v. Dori, 208 So. 3d 817, 821 (Fla. 3d DCA 2017) ("It is well-settled law in Florida that affirmative defenses not raised are waived."); Airport Plaza Ltd. v. United Nat'l Bank of Miami, 611 So. 2d 1256, 1257 (Fla. 3d DCA 1992) ("[I]t was improper to introduce at trial issues not previously raised in the pleadings.").[2]

In sum, thrusting Mr. Daskalopoulos' foreclosure proceedings into the opening statement of this civil lawsuit about a sinkhole claim was improper. Cf. Music v. Hebb, 744 So. 2d 1169, 1172 (Fla. 2d DCA 1999) (observing that the "limited purpose"

---

[2]Citizens also argues that any error was invited by Mr. Daskalopoulos because his counsel broached the issue of Mr. Daskalopoulos' foreclosure during his direct examination. We are not persuaded by that argument, as our review of the record shows that Mr. Daskalopoulos' decision to raise this line of questioning on direct was prompted entirely by the trial court's prior ruling to allow Citizens to pursue this line of inquiry. See Sheffield v. Superior Ins. Co., 800 So. 2d 197, 203 (Fla. 2001) (recognizing that, "once the party is faced with the knowledge that the jury will hear the evidence, it is legitimate trial strategy to introduce the evidence in an attempt to mitigate the harm and diffuse the prejudicial impact of the evidence" and holding "that once a court makes an unequivocal ruling admitting evidence over a movant's motion in limine, the movant's subsequent introduction of that evidence does not constitute a waiver of the error for appellate review"); see also Saleeby v. Rocky Elson Const., Inc., 3 So. 3d 1078, 1085-86 (Fla. 2009) (applying Sheffield and holding that litigant's decision "to minimize the impact of . . . evidence by admitting it himself . . . did not waive his objection [to the evidence], and his presentation of the contested evidence did not constitute invited error"). We are similarly unpersuaded by Citizens' reliance upon Concepcion v. State, 188 So. 3d 5 (Fla. 3d DCA 2016), Graves v. State, 937 So. 2d 1286 (Fla. 4th DCA 2006), and Barows v. State, 805 So. 2d 120 (Fla. 4th DCA 2002), which, in different contexts, addressed the admissibility of nonparty witnesses' financial motivation to provide testimony against criminal defendants. None of those cases dealt with a civil plaintiff's purported "motivation" for filing a lawsuit, which, again, is usually irrelevant and inadmissible. And as the Graves court explained, "A defendant in a criminal case has considerable latitude in cross-examination to elicit testimony showing the bias of a witness." 937 So. 2d at 1290.

of opening statements is "to set out the relevant, and only the relevant, facts of the case"); Collins Fruit Co. v. Giglio, 184 So. 2d 447, 449 (Fla. 2d DCA 1966) ("Although it is axiomatic that the arguments of counsel are not evidence, it would be naive to suppose that they do not have a profound effect upon the jury.").  Expounding upon that unpled issue at length in Mr. Daskalopoulos' cross-examination under the pretense that it was some form or impeachment or evidence of bias was equally improper.  Cf. Nationwide Mut. Fire Ins. Co. v. Bruscarino, 982 So. 2d 753, 754 (Fla. 4th DCA 2008) (holding that "[i]mpeachment on collateral issues is clearly impermissible" and explaining that "when evidence 'neither (1) is relevant to prove an independent fact or issue nor (2) would discredit a witness by establishing bias, corruption, or lack of competency on the part of the witness,' it constitutes collateral, impermissible evidence" (quoting Strasser v. Yalamanchi, 783 So. 2d 1087, 1095 (Fla. 4th DCA 2001))).  Taken together, we conclude that Mr. Daskalopoulos was deprived of a fair trial in this case.  Accordingly, we must reverse the final judgment and remand this case for a new trial.

Reversed and remanded.


NORTHCUTT and ROTHSTEIN-YOUAKIM, JJ., Concur.